Argued January 23, affirmed March 4, 1974, petition for
review pending

EARL JUNIOR BONNEY, *Petitioner, v.* OREGON
STATE PENITENTIARY, *Respondent.*

519 P2d 383

*Charles N. Hilke,* Marion-Polk Legal Aid Service, Inc., Salem, argued the cause for petitioner. With him on the brief were Victor C. Pagel, Marion-Polk Legal Aid Service, Inc., Salem, and Stanley A. Sitnick, Legal Aid Service, Portland.

*Al. J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

SCHWAB, C. J.

Petitioner, an inmate at Oregon State Penitentiary, was found guilty by a disciplinary committee of threatening to kill a guard and ordered to serve 180 days in segregation. Petitioner now seeks judicial review of the disciplinary committee's decision pursuant to recently enacted ORS 421.195.[1] The principal issues raised are whether the procedures followed in prison disciplinary hearings comply with statutory requirements and with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Corrections Division of the Department of Human Resources has, as required by ORS 421.180

---

[1] ORS 421.195 provides:

"If an order places an inmate in segregation or isolation status for more than seven days, institutionally transfers him for disciplinary reasons or provides for noncertification to the Governor of a deduction from the term of his sentence under paragraphs (a) and (b) of subsection (1) of ORS 421.120, the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 30 days of the order for which review is sought. The division shall transmit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the division. The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (7) of ORS 183.480. The filing of the petition shall not stay the division's order, but the division may do so, or the court may order a stay upon application on such terms as it deems proper."

to 421.190, promulgated rules governing disciplinary proceedings at the Oregon State Penitentiary, Oregon State Correctional Institution and Oregon Women's Correctional Center. The major provisions of these rules (Procedures for Disciplinary Action) are as follows.

Each institution shall establish a disciplinary committee composed of three to five members. Rule II (1) and (2). Proceedings are initiated before the committee when a prison employe submits a written report alleging that an inmate has violated prison rules. Rule III (2). Considerable detail is required in this report. The inmate involved "shall be promptly * * * provided with a copy" of this report. Rule III (2) (c). The disciplinary committee then sets a hearing date. The inmate involved "shall be informed of the time of the hearing within a reasonable time prior to the hearing." Rule III (3).

At the hearing, the chairman first reads and explains the allegations to the inmate. Rule IV (5) (a). The inmate is then given the opportunity to admit or deny the charges. Rule IV (5) (b). Evidence is then gathered, as discussed below.

The Corrections Division rules provide that the disciplinary "committee shall take the matter under advisement. A written decision shall be issued no later than 3 days from the conclusion of the hearing, excluding weekends and holidays." Rule IV (5) (d).

The superintendent of each institution then reviews each disciplinary committee decision. The superintendents have the authority to affirm, reverse or modify the committees' decisions. Rule VI (3).

None of the above procedures are here challenged.

What has been challenged are the rules covering representation at disciplinary hearings, and the inability of the inmate to confront and cross-examine adverse witnesses. Representation is governed by Rule IV (2), which provides:

"In a disciplinary committee hearing, upon a showing of need based upon consideration of language barriers, competency and capacity of the resident [i.e., inmate] in relation to the charge or surrounding circumstance, provision may be made for assistance by a representative of the resident in the interest of a fair hearing. Such representation may be by a member of the staff or a volunteer resident."

Confrontation is governed by Rule IV (4), which provides:

"A resident has the right to submit questions to be posed by the committee to the person charging or other persons. The committee may give leave to submit further questions at the end of the hearing. All relevant questions will be posed by the committee."

I

Petitioner's statutory contention is that Rules IV (2) and IV (4) do not comply with the requirements of ORS 421.180 to 421.190:

"The division shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. The procedures adopted shall be subject to the approval of the Governor." ORS 421.180.

"The procedures adopted pursuant to ORS 421.180 shall provide that an inmate shall be entitled to assistance and representation under terms and conditions established by the division. Nothing in this section shall be construed to limit the authority of the division to designate persons eligible to assist and represent the inmate." ORS 421.185.

> "Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedure and the division shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing." ORS 421.190.

Specifically, petitioner contends that: (1) Rule IV (2) is invalid under ORS 421.185, which petitioner reads as requiring an appointed attorney or "attorney substitute" in every prison disciplinary case; and (2) Rule IV (4) is invalid under ORS 421.190, which petitioner reads as requiring the right to confrontation.

Petitioner's analysis of the statutes is based on legislative history. In 1971 the Administrative Procedures Act, ORS ch 183, was substantially amended. Oregon Laws 1971, ch 734, p 1773. Thereafter, Oregon prisoners began making claims that the Corrections Division was subject to the rule-making and contested-case provisions of the APA. Taking the position that it would be impractical and undesirable to fully comply with the APA, the Corrections Division then applied to the Governor for an exemption pursuant to ORS 183.315.[2] The Governor granted a partial exemp-

---

[2] ORS 183.315 provides in part:

"* * * * *

"(4) Upon application of any agency, the Governor may, [sic] exempt any agency rule or order or class of rules or orders from a requirement of ORS 183.310 to 183.500, when:

"* * * * *

"(b) The Governor has found that conformity with such requirements of ORS 183.310 to 183.500 would be so inconvenient or impracticable as to defeat the purpose of the rule or order, and is not in the public interest, in light of the nature of the rule or order and in light of the enabling act or other laws affecting the agency.

tion, and in accordance with ORS 183.315 (5), specified certain alternative procedures that were to be followed in prison disciplinary proceedings. The alternative procedures required by the Governor were substantially the same as the Corrections Division's current rules of procedure described above.

Under the terms of ORS 183.315 (5) (b), the Governor's partial exemption and alternative procedures could remain in effect only until the adjournment of the 1973 legislative session. If the 1973 legislative assembly had done nothing, the Corrections Division would have reverted to the situation of having to fully comply with the rule-making and contested-case provisions of the APA. Several bills were introduced during the 1973 session to avoid such a situation.

The principal proposed solutions were embodied in SB 376 and SB 467. SB 376 would have required the Corrections Division to comply with most of the requirements of the Administrative Procedures Act. As originally introduced, SB 467 would have simply approved the Governor's partial exemption and alternative procedures. This notion was expressed in Sec 4 of SB 467, which was identical to what is now codified as ORS 421.180.

In committee hearings representatives of the Corrections Division and the Attorney General's office

---

"(5) When the Governor exempts an agency from a requirement of ORS 183.310 to 183.500 pursuant to subsection (4) of this section, he shall establish alternative procedures for the agency action consistent, in so far as possible, with the intent and purpose of ORS 183.310 to 183.500.

"* * * * *

"(b) An exemption, and any alternative procedure prescribed shall terminate upon the adjournment of the next regular legislative session after issuance of the exemption."

testified in favor of SB 467 and against SB 376. Others testified in favor of SB 376 and against SB 467. The principal distinction between those in favor and opposed to the different bills was their opinions about what constitutional minimums the correctional authorities had to observe in disciplinary proceedings. The disagreement centered on whether appointed counsel was required in all cases and whether the right to confront adverse witnesses was required in all cases —the same issues here raised. There was much discussion of the recent case law developments in this area, with particular attention devoted to two decisions of the United States District Court for the District of Oregon: *Capitan v. Cupp*, 356 F Supp 302 (D Or 1972), and *Kessler v. Cupp*, Civil No. 72-485 (D Or, filed Nov. 15, 1973). In both of those cases the District Court had held counsel and confrontation were constitutionally required. Apparently—and understandably—uncertain about the metes and bounds of constitutional doctrine in this area, the senate committee voted to table SB 467.

The Attorney General then suggested that SB 467 be amended to compromise the different viewpoints on constitutional requirements. The suggested amendments included what was later passed and codified as ORS 421.185, dealing with the question of inmate representation, and ORS 421.190, dealing with confrontation, etc. SB 467, as amended, was passed by the Senate and the House during the closing weeks of the legislative session. The broader bill, SB 376, died in committee upon adjournment.

From this legislative history, petitioner constructs the following syllogism: (1) SB 467, as originally introduced, would have continued in force the

Governor's alternative procedures, which did not include representation in every case or confrontation, but it was tabled in committee; (2) SB 467 was amended to include reference to representation, ORS 421.185, and the taking of evidence, ORS 421.190, and as so amended, was passed by the legislature; therefore, (3) the purpose of the amendments must have been to repudiate the Governor's procedures and instead provide for representation and confrontation.

As an exercise in logic, this may have some appeal. As an exercise in statutory construction, it is not persuasive. ORS 421.185 expressly states that the Corrections Division's disciplinary procedures "* * * shall provide that an inmate shall be entitled to assistance and representation under terms and conditions established by the division * * *." We would ignore the last eight words of this phrase if we adopted petitioner's contention that ORS 421.185 establishes a statutory right to representation in each case.[3]

■ The Corrections Division has, by the adoption of Rule IV (2), complied with the legislative mandate to establish terms and conditions governing representation of inmates in disciplinary proceedings. Rule IV (2) is not in violation of ORS 421.185.

■■ Likewise, we conclude that Rule IV (4), which prohibits confrontation, is not in violation of the requirement of ORS 421.190 that the disciplinary procedures provide for taking evidence in a manner that

---

[3] The record in this case reveals that petitioner was notified he could request appointed assistance in accordance with Rule IV (2). The disciplinary committee's findings state that petitioner did not request appointed counsel. Thus, there would be a basis for holding that the claim petitioner now makes was never raised below. However, because the issue is one of first impression under a new statute, we resolve it on its merits.

affords "the inmate a reasonable opportunity for a fair hearing." In so far as we can discern from the legislative history, the statutory standard, "fair hearing," was intended to merely specify that the method of taking evidence in a disciplinary proceeding had to comply with minimum due process standards— whatever they were determined by the courts to be. Testimony before the legislative committees can be summarized as follows: (1) judicial concern with due process in prison disciplinary procedures was a very recent development; (2) there was not yet any United States Supreme Court decision directly in point; and (3) although there were dozens of lower federal and state court decisions, many of them had reached either literally conflicting or somewhat different results. From the discussions that took place, we infer that the legislature wanted to comply with minimum due process standards, but was uncertain about what such standards might be. ORS 421.190 is the result.

■ Accordingly, we disagree with petitioner's claim that ORS 421.190 creates a statutory right to confrontation in disciplinary proceedings. We hold that ORS 421.190 creates such statutory rights only to the extent they are also constitutional rights.

## II

Turning to the constitutional issues, petitioner contends that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires as constitutional minimums: (A) the right to representation by an appointed attorney or "attorney substitute" in every disciplinary hearing; and (B) the right to confront and cross-examine adverse witnesses in every disciplinary hearing.

There is little point in embarking on an extended constitutional analysis because what we write here may have a short life expectancy. In *McDonnell v. Wolff*, 483 F2d 1059 (8th Cir 1973), the court held that due process requires representation and confrontation in every disciplinary case. On January 21, 1974, the United States Supreme Court granted certiorari in that case. 42 USLW 3416. Under the Supreme Court's normal briefing and argument schedule, a decision by June 1974 is likely.

A

■ In the meantime, we find no basis in existing Supreme Court decisions for petitioner's assertion of a constitutional right to representation in every disciplinary proceeding. In *Gagnon v. Scarpelli*, 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), the Supreme Court rejected the claim that due process requires a right to representation in every parole/probation revocation proceeding. Instead, the Supreme Court held that appointed counsel need only be provided in certain circumstances, and enumerated many such circumstances. The Corrections Division's Rule IV (2) closely parallels the *Gagnon* language.

■ We do not suggest that there is a close analogy between parole/probation revocation and prison disciplinary procedures. The question in a revocation proceeding is whether the parolee or probationer is to be taken from a "conditional liberty" status and placed in custody. The question in a prison disciplinary hearing is whether a prisoner is to be punished for violating rules deemed essential to the good order and security of the prison. Specifically, in its most extreme form, the question is whether a prisoner is to be moved from minimum custody to maximum custody (called "isola-

tion"). The potential impact on the individual is far greater in a revocation proceeding than in a disciplinary proceeding. We therefore hold that since Rule IV (2) satisfies the *Gagnon* standard applicable in a revocation proceeding, *a fortiori,* the rule satisfies constitutional requirements in a disciplinary proceeding.

## B

The distinction between parole/probation revocation and prison discipline hearings becomes more significant when we reach petitioner's contention that due process requires the right to confront adverse witnesses. In *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), and *Gagnon v. Scarpelli,* supra, the Supreme Court held that confrontation must be accorded in parole/probation revocation hearings except in a confidential informant situation. Petitioner claims the same right should carry over into disciplinary proceedings.

*Morrissey* also states that "due process is flexible and calls for such procedural protections as the particular situation demands." 408 US at 481. An illustration of such flexibility is *Richardson v. Perales,* 402 US 389, 91 S Ct 1420, 28 L Ed 2d 842 (1971). In that case the Supreme Court held that written medical reports were admissible in a social security disability hearing over the objection that such a practice violated due process because it afforded no opportunity for cross-examination.

We recognize that *Richardson* is different from this situation for at least two reasons. (1) In *Richardson,* procedures were available, but not used, by which the claimant could have subpoenaed and then confronted the doctors who had written the adverse

medical reports, 402 US at 396-97; in this case, no such procedures are available but, instead, under the terms of Rule IV (4), "All relevant questions will be posed by the [disciplinary] committee." (2) In *Richardson,* the court noted that although medical reports are hearsay in the technical sense, they are written by independent, licensed physicians with no stake in the outcome of the administrative proceedings and are traditionally regarded as reliable, 402 US at 402, 408; in this case the written reports are from those who have accused the inmate of an infraction, and thus may be less detached.

■ Nevertheless, we conclude that the particular situation of prison discipline is substantially different from parole and probation revocation in which confrontation is required, and sufficiently different to call for an extension of the *Richardson* rule that confrontation is not always constitutionally necessary. Face-to-face cross-examination can frequently be traumatic. This is because the very essence of cross-examination is an attempt to *discredit* a witness—to show he inaccurately perceived or remembered an event, or even that his testimony is intentionally false. Although a witness may detest a lawyer for these implications created by cross-examination, in judicial proceedings and parole/probation revocations we are willing to pay that price in pursuit of ascertaining the truth. But then it might not be a high price to pay; in most communities the odds against a lawyer and a witness he has cross-examined thereafter being in intimate contact would probably be high.

The Oregon State Penitentiary is, however, not a typical community. There, an average inmate population of somewhat over 1000 and an average staff of

about 200 live in a closed society with constant, intimate, involuntary contact. In such a society, any animosities created by cross-examination could easily affect those daily contacts between those who were witnesses in a disciplinary hearing, producing results detrimental to the institution's security and rehabilitative efforts.

■ Remembering that due process must be fashioned to fit the particular situation, *Morrissey v. Brewer,* supra, we conclude that in the particular situation of prison discipline, Rule IV (4) represents a reasonable balancing of the conflicting interests involved—the inmate is allowed to identify all possible sources of evidence, and the questions the inmate wants asked are, in fact, asked. The only difference from familiar cross-examination is that the questions are relayed by an intermediary—somewhat the like the familiar practice of depositions on written interrogatories—rather than by the inmate or his representative. This small loss to the inmate, if loss it be, is more than offset by the advantage to the institution of reduction of the hostility that would otherwise likely be created by face-to-face confrontation.[④]

In summary, we conclude that the challenged procedural rules comply with all statutory and constitutional requirements.

■ Petitioner also contends that the disciplinary committee's adverse decision is not supported by sub-

---

[④] While most of petitioner's argument centers around the confrontation issue, petitioner also seems to claim that due process requires that he be entitled to present favorable evidence in the form of live testimony at the disciplinary hearing. We reject the notion that this is constitutionally essential for the same reasons we have concluded confrontation is not constitutionally essential.

stantial evidence. Our review of factual determinations is here limited to whether they are "supported by reliable, probative and substantial evidence in the whole record." ORS 183.480 (7) (d). Petitioner would have us hold that the written reports of two penitentiary employes that were the basis of the disciplinary committee's decision in this case are not, as a matter of law, substantial evidence within the meaning of ORS 183.480 (7) (d). A similar contention was considered and rejected in *Richardson v. Perales,* supra. The decision is supported by substantial evidence.

Affirmed.