525 P.2d 191 (1974)
Robert FOWLER, Petitioner,
v.
OREGON STATE CORRECTIONAL INSTITUTION, Corrections Division, Respondent.
Court of Appeals of Oregon.
Argued and Submitted May 20, 1974.
Decided August 12, 1974.
John K. Hoover, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.
W. Michael Gillette, Sol. Gen., Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Atty. Gen., and Scott McAlister, Asst. Atty. Gen., Salem.
Before SCHWAB, C.J., and LANGTRY and THORNTON, JJ.
THORNTON, Judge.
This is an appeal from a disciplinary order of the Superintendent of the Oregon State Correctional Institution (OSCI).
Petitioner was found guilty by an OSCI disciplinary committee of disobeying a direct order of a correctional officer (Rule 12), and, as part of the incident, urging another inmate not to give his name to the officer and menacing the officer.
The committee entered its order that petitioner be disciplined by requiring him to serve seven days in segregation, and to forfeit 30 days' statutory good time. Petitioner appealed to the superintendent, who *192 affirmed the order of the disciplinary committee.
Petitioner contends that the order is invalid for the following reasons:
(1) The officer's preliminary misconduct report allegedly was not submitted to the superintendent during the same working day as the alleged violation, as required by Article III(2)(a) of the "Procedures for Disciplinary Action";
(2) The disciplinary committee failed to follow the applicable rules of the Corrections Division relative to (a) notice and (b) advice as to the right to representation and to pose questions in such proceeding;
(3) The committee failed to make findings of fact and conclusions of law as required by ORS 183.470; and
(4) The committee failed to provide him a fair hearing as required by ORS 421.180 to 421.195.
As we understand the procedure, when an alleged infraction of the disciplinary rules occurs, the correctional officer must file a report of misconduct with the superintendent of the institution. This report must be filed during the same working day as the infraction, and might be termed the preliminary report of misconduct. Thereafter a second document entitled "Resident Misconduct Report" is prepared, a copy of which is delivered to the inmate.
The preliminary misconduct report, which appears to be the document on which petitioner's first contention is based, is not one of the documents which is a part of the record required to be transmitted to this court under Article VI(4) of the above rules. We recognize that petitioner was not represented by an attorney at his disciplinary hearing before the committee; accordingly, he would not be estopped from raising this contention in this court for the first time by his failure to raise this contention below. However, petitioner is now represented by an attorney on this appeal. If petitioner, through his attorney, wishes to raise this issue in this court, it is incumbent upon him to make certain that the record is sufficiently complete to enable this court to review. See, Terry v. Layman, 12 Or. App. 283, 287, 505 P.2d 930, Sup.Ct. review denied (1973). Without competent supporting evidence in the record to substantiate petitioner's version of the matter, the statutory presumption of regularity is controlling (ORS 41.360(15)), and this court has nothing to review. Terry v. Layman, supra.
Petitioner's second contention is that the hearing record contains no evidence that he was given notice prior to the hearing or advised of his rights. Unlike in Moore v. OSP, 16 Or. App. 536, 519 P.2d 389 (1974), upon which petitioner relies, the "Resident Misconduct Report" involved in the present case, and which is part of the record, contains this information. This statement of the charge and advice as to the inmate's rights in connection with the hearing constitutes legal and sufficient notice. Furthermore, absent a showing by petitioner that he was in some way prejudiced in his defense by the fact that only 26 hours elapsed between notice and the hearing, we conclude that petitioner was not prejudiced thereby. See, Wolff v. McDonnell, ___ U.S. ___, 94 S.Ct. 2963, 41 L.Ed.2d ___ (1974), where the court held, inter alia, that 24 hours' written advance notice of a prison disciplinary hearing was sufficient notice to meet minimum due process.
Petitioner's third contention concerns the necessity for findings of fact and conclusions of law. Contrary to petitioner's argument, the recommendation of the disciplinary committee and the order of the superintendent are not subject to the procedural requirements of ORS 183.470, since ORS 183.315(4) expressly provides:
"The provisions of ORS 183.415 to 183.500 do not apply to orders issued to persons who have been committed pursuant to ORS 137.124 to the custody of the Corrections Division."
Since the order challenged here was issued to a person committed pursuant to ORS 137.124, ORS 183.470 is not applicable. *193 However, while respondent was not required to comply with the provisions of ORS 183.470, there must be a written statement by the fact finders of the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, supra; Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). We can find no such written statement in the record. We conclude therefore that this was reversible error and that this proceeding must be reversed and remanded.
On petitioner's fourth point, these contentions (right of confrontation and cross-examination) were resolved against petitioner in Bonney v. OSP, 16 Or. App. 509, 519 P.2d 383 (1974). Accord, Wolff v. McDonnell, supra.
Reversed and remanded for further proceedings not inconsistent with this opinion.
SCHWAB, Chief Judge (specially concurring).
I disagree with that portion of the majority opinion which holds that there is no evidence that the misconduct report was not filed within the time required by Rule III(2)(a) of the Corrections Division. The majority base this conclusion on their "understanding" that two separate documents are involved: a preliminary misconduct report and a subsequent Resident Misconduct Report.
I do not read the rules as envisioning two written reports but, rather, only one. Rule III(2) provides that:
"When corrective action includes submission of a misconduct report.
"a. The employe shall submit a written report during the workday in which the violation occurred or was discovered and before leaving the institution at the completion of the workday.
"b. The written report shall include the identity of the inmate suspected, the time, date and events constituting the alleged violation, the rule violated, the name and position of the employe making the report and any corrective actions already taken and identify the authority for corrective action under Article III 4 below.
"c. The inmate shall be promptly informed that a report has been submitted and provided with a copy thereof, this may be done by any staff member."
I interpret the above rule as meaning that the report which the officer must file on the same working day as the infraction, subsection a, supra, is the report of which a copy is to be provided to the inmate, subsection c, supra. I further interpret the rules as providing that this report be made a part of the record for the purpose of judicial review, Rule VI(4)(b)(i), "* * * the record shall contain: (i) The notice of violation." Indeed, nothing in the procedural rules refers to more than one report in connection with an alleged violation; all references are in the singular. See, Rules III(3), IV(5)(e), V(1) and V(4).
Only one misconduct report is a part of the record in this case. It shows on its face that although the violation occurred at 7:35 a.m. on January 15, 1974, the report was not prepared until January 16, 1974. On this record, I would reverse on this additional ground of noncompliance with Rule III(2)(a).
True, it might be contended that this is a hypertechnical violation of the rule and that no prejudice has been shown.
As to the technical nature of the violation, I would answer as follows: In Bonney v. OSP, 16 Or. App. 509, 519 P.2d 383, Sup.Ct. review allowed (1974), we held the Corrections Division has wide latitude to write procedural rules governing disciplinary hearings. Specifically, we sustained *194 rules that substantially limit representation of inmates and prohibit cross-examination. It seems to me that the essential corollary to the wide latitude we allowed in Bonney is insisting that the Corrections Division strictly comply with its own rules.
As to the question of prejudice, I note that we have not yet decided whether, once a violation of the procedural rules is established, it is incumbent upon the prisoner to prove the presence of prejudice, or instead, it is incumbent upon the prison officials to prove absence of prejudice. See generally, State v. Bishop, 7 Or. App. 558, 492 P.2d 509 (1972).
It could be reasonably argued that prison officials should be required to prove absence of prejudice. The legislature has determined that inmates should not be subject to major disciplinary sanctions without "a reasonable opportunity for a fair hearing," ORS 421.190, and has delegated to the Corrections Division the responsibility to promulgate procedural rules that comply with this standard. See, ORS 421.180 to 421.195. In other words, the legislature has determined that prisoners should have procedural rights in disciplinary proceedings and the Corrections Division, by administrative rules, has defined exactly what those rights are. But what the legislature by statute has mandated is generally required, and what the Corrections Division by regulation has provided is specifically required, might be largely nullified by holding that a prisoner, usually alone and unaided during disciplinary hearings, must prove he was prejudiced when his procedural rights were violated. Since, frankly, I think such proof will rarely be available, the net effect of requiring a prisoner to prove prejudice might be tantamount to abolishing his procedural rights established by statute and regulation.
However, for purposes of this case I do not think it is essential to resolve the question of who has the burden of proving the presence or absence of prejudice.