Argued August 22, reversed and remanded September 23, 1974

## STEPHEN BEKINS, *Petitioner, v.* OREGON STATE PENITENTIARY (No. 3336, 03-74-023), *Respondent.*

526 P2d 629

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Petitioner was found guilty by a prison disciplinary committee of assaulting another inmate. On appeal petitioner raises four issues: (1) whether he was entitled, under the prison's procedural rules, to the assistance of counsel; (2) whether he was entitled, under the constitution and procedural rules, to present additional evidence before the disciplinary committee; (3) whether the committee violated the procedural rules governing informant's reports; and (4) whether all factors germane to the sanction imposed were properly considered.

■ It is now established that prisoners do not have the constitutional "right to either retained or appointed counsel in disciplinary proceedings." *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935, 959 (1974); *Bonney v. OSP,* 16 Or App 509, 519 P2d 383, Sup Ct *review allowed* (1974). Accordingly, petitioner bases his right-to-representation contention solely on the applicable procedural rule. It provides:

> "In a disciplinary committee hearing, upon a showing of need based upon consideration of language barriers, competency and capacity of the resident in relation to the charge or surrounding circumstance, provision may be made for assistance by a representative of the resident in the interest of a fair hearing. Such representation may be by a

member of the staff or a volunteer resident." Rule IV (2).

More specifically, petitioner relies on *Gilmore v. OSP*, 17 Or App 348, 521 P2d 1313 (1974), in which we held that when a representative had been appointed for an inmate, but later allowed to withdraw, Rule IV (2) required, under the facts of that case, that another representative be appointed.

The facts of this case are considerably different from the facts in *Gilmore*. Here petitioner first appeared before the disciplinary committee on March 11, 1974. He was immediately advised that the committee had determined, in light of Rule IV (2), that because of the serious nature of the charge, it would permit him to be represented. Although the committee members were at first confused about who would be allowed to represent petitioner (see discussion below), they finally made it clear that petitioner could be represented by a legal aid staff member, a law student, any lay person, a member of the prison staff or a fellow inmate. Petitioner insisted he had the right to be represented by a member of the Bar. The committee ruled that he did not, and adjourned the hearing to permit petitioner to obtain representation within the limits that had been specified.

The hearing reconvened on March 27, 1974. The committee inquired about petitioner's efforts to obtain a representative. Rather than answer that inquiry, petitioner renewed his argument that he had a right to representation by an attorney, stating, "* * * I still make the same objection that I am being denied my right to an attorney * * *." The committee chairman again explained the limits imposed on who could be petitioner's representative, concluding, "* * * We

are going to give you just one more week to get your representative lined up * * *."

The hearing reconvened on April 3, 1974. The committee again asked petitioner if he had obtained a representative. Petitioner again argued he had a right to be represented by an attorney. Petitioner concluded:

"* * * The counsels that I talked to said that they were unable to assist me because of the seriousness of this and the attorneys that I contacted said that they were unable to get past the closed door policy of this Committee * * *."

Having twice previously adjourned hearings to enable petitioner to obtain representation, the committee treated petitioner's intransigent position as a waiver of the right to representation they had offered him.

■ We basically agree with the committee. Rule IV (2), supra, permits, in some situations, a prisoner to be represented in a disciplinary hearing. The rule does not require the committee to force representation upon an inmate. Since petitioner did not want the representation offered, the committee could either conduct the hearing without representation or allow petitioner to effectively block disciplinary action by refusing representation within the limitations imposed by the committee.

We say we "basically" agree with the committee because of two reservations. First, the committee placed the entire onus for obtaining representation upon petitioner. Technically, this would seem to be consistent with the wording of Rule IV (2) which only provides that "provision may be made for assistance by a representative." Practically, this also has the advantage of permitting an inmate to select the repre-

sentative of his choice. However, we are constrained to comment that the disciplinary committee, ultimately guided by the statutory "fair hearing" standard, ORS 421.180 - 421.190, might have been well advised to appoint a specific representative, such as the Prison Ombudsman, when faced with the situation created by petitioner in this case. Then if the inmate refused the services of the appointed representative, there could be no doubt that there had been a waiver of any right to representation.

Our second reservation concerns apparent misunderstandings on the part of the disciplinary committee members about the import of Rule IV (2). This confusion is indicated by the following excerpts from the hearing record in this case:

"SHAW [disciplinary committee chairman]: Let me read to you what the APA [Administrative Procedures Act] allows and then we will go on into what you would be permitted in this particular case. 'In those cases where Disciplinary Committee feels the request of the inmate for representation is based on the inmate's competence and capacity or that a language barrier exists or the issues of the case are so complex that the inmate could not represent himself, representation may be allowed. Representation, in any case, is limited to the assistance of staff member or volunteer inmate.' [Sic —see below.] We have extended this in this particular case to a law student or someone of that type * * *.

"* * * * *

"HOKONSON [disciplinary committee member]: But, we are not talking about representation. We want you to understand that. We just are telling you that one of these legal aid, law students, that come in here, they can be present, primarily so as to assist you if you do want to appeal the

case. They are to advise you—not during the hearing, but they can be present during the hearing. They are not going to be allowed to participate, but they will be allowed to be present.

"* * * * * [Discussion off the record.]

"SHAW: We are back on the record. We are still on this matter of representation and I don't believe that I fully understood the extent of the representation that you would be allowed. In the discussion of this, we have now arrived at the point that you could have any general lay person represent you, not necessarily sit by and observe. They could actually enter the representative field. But it could not be an attorney. It could be a law student or anyone that you would have confidence in who is not an attorney that you feel would be helpful. Now we are extending it to this extent because the nature of the charge is very serious.

"* * * * *

"HOKONSON: This man that comes in, he can speak on your behalf. He's not just—you know—he doesn't have to be just an observer. He can speak on your behalf.

"SHAW: In other words, we've added this extra step for you. I can't see how you feel that this is a detriment to you when in fact the rules do not permit this type of representation at all. We have gone the extra step in this case.

"* * * * *"

We have previously assumed that the limited right to representation created by Rule IV (2) means representation in the normal and traditional sense of that term—a person who is permitted to orally advocate the inmate's position. Although the disciplinary committee subsequently reversed itself, it is disquieting to note the committee initially interpreted the meaning of representation quite differently—a person

"allowed to be present" but not "allowed to partici-pate."

We also note that when the committee chair-man purported to quote from Rule IV (2) at the beginning of the above excerpts, he stated the second sentence as follows:

> " '* * * Representation, in any case, *is limited. to* the assistance of staff member or volunteer in-mate * * *.' " (Emphasis supplied.)

By contrast, the second sentence of Rule IV (2) as re-produced in both parties' briefs on appeal actually reads:

> "* * * Such representation *may be* by a mem-ber of the staff or a volunteer resident." (Emphasis supplied.)

Because of its understanding of the text of Rule IV (2), the committee repeatedly suggested to petitioner that it was purposely deviating from the limits of that rule in offering him representation by a legal aid staff member or law student. On appeal petitioner has relied on these statements in advancing the novel argument that since the committee was willing to violate Rule IV (2) by allowing representa-tion by a law student, the committee should have "violated all the way" by allowing representation by a member of the Bar.

In addition to other flaws in petitioner's argu-ment, we believe it may well be based on a misunder-standing of Rule IV (2)—a misunderstanding that originated from the disciplinary committee in this case. The rule does not state representation "is limited to" staff members and volunteer inmates. The rule states representation "may be" by such persons. We interpret this language as merely illustrative. In

other words, we do not find in Rule IV (2) any limitation on who might represent an inmate, but, rather, merely standards governing whether any representation is necessary.

■ We recognize that it is possible to interpret the rule as did the disciplinary committee, but the fact remains that the committee offered petitioner representation and petitioner declined it. There is no violation of Rule IV (2).

Petitioner's second contention is that the disciplinary committee erred in failing to grant him the right to produce live testimony and documentary evidence before the committee, and in failing to investigate certain aspects of the alleged assault. This contention is based on both claims of constitutional right and rights under the procedural rules.

■ In *Dragoo v. OSP,* 19 Or App 1, 526 P2d 637 (1974), we rejected petitioner's argument that he has a constitutional right to present favorable testimony before the disciplinary committee *through live witnesses.* In *Dragoo* we also reserved judgment on the claim of constitutional right to introduce documentary evidence in prison disciplinary proceedings to await a case in which an inmate "sought to introduce documentary evidence." 19 Or App at 10.

This is not such a case. There is much reference in the record to an investigation by the state police of the assault petitioner was charged with having committed. Apparently this investigation culminated in a written report. In a letter dated March 28, 1974 petitioner requested that the disciplinary committee

"* * * familiarize yourselves, and provide me

as well, with the following particulars of the state police investigation * * * the result of all officers and Sargents [sic] working in the block, at the breakfast unlock, in regards to I.D. of myself * * * the results of all inmates living on 5th tier D block who ate breakfast on the morning of the incident, in regards to Eyewittness [sic] (possible) ID of myself * * *."

There were additional references to the police report during the hearing, mostly in the form of requests by petitioner that the committee investigate the contents of that report. Mr. Stone, the committee's investigator, did read the report and stated to the committee that regarding its relevance to the case against petitioner:

"* * * There was nothing in that Police Report that was particularly incriminating or particularly the opposite. There was just not much there."

Petitioner then asked Mr. Stone a couple of questions and Mr. Stone responded by elaborating on his general comment quoted above. There was no further reference to the police report.

■ This does not establish that petitioner sought to introduce the police report as documentary evidence. He merely sought and obtained an investigation of and summary of the contents of the report. Again, as in *Dragoo,* the question of whether there is a constitutional right to introduce documentary evidence would not be in any way outcome-determinative, and we therefore decline to resolve it at this time.

Petitioner makes a related claim of failure to comply with Rule IV (4), which provides:

"A resident has the right to submit questions to be posed by the committee to the person charging or other persons. The committee may give leave to submit further questions at the end of the hearing.

All relevant questions will be posed by the committee."

Petitioner claims he requested that questions be posed to an alleged eyewitness to the assault, and that the record fails to indicate that this was ever done.

Petitioner's letter of March 28 to the committee named the alleged eyewitness and, as we interpret that letter, requested that the witness's testimony be obtained from the police report. When the disciplinary hearing reconvened thereafter on April 3 and April 10 petitioner stated a great number of questions he wanted put to many persons, but there was no further reference to the alleged eyewitness.

■ If petitioner wanted anything said by the alleged eyewitness which was recorded in the police report to be brought before the committee, this was, in effect, done when the investigator told the committee that there was nothing relevant to petitioner in that report. If petitioner wanted something more from the alleged eyewitness, he never properly sought to obtain anything more within the terms of Rule IV (4) because he never "posed questions" to be asked the alleged eyewitness. As the committee chairman stated to petitioner in explaining Rule IV (4): "* * * We are not going to go and interview the entire institution on a fishing expedition * * *." We agree with this interpretation of Rule IV (4), and do not find any procedural rights guaranteed petitioner by that rule were violated.

Petitioner's third argument involves the rules governing use of informants' reports by the disciplinary committee. The first duty of the disciplinary committee is "determining at a hearing if any of the

rules for inmate conduct have been broken." Rule II (3)(a). In performing this duty, the "committee shall consider that information which is of such reliability as would be considered by reasonable men in the conduct of their affairs." Rule IV (7).

Against the background of this general standard, there are more specific standards governing evidence that comes from informants.

"If any of the facts establishing a committee determination are derived from an unidentified informant

"a. The record must contain information from which the committee can reasonably conclude that the informant was credible and his information reliable.

"b. The record must contain the informant's statement in language that is factual rather than conclusory and must establish by specificity that the informant spoke with personal knowledge of the matters contained in such statement." Rule IV (6).

And for purposes of judicial review, the "* * * record shall contain: * * * information on and statements of unidentified informants received" by the committee. Rule VI (4)(b)(iii).

The repeated references to "statements" of informants makes it appear that it was contemplated, when the procedural rules were written, that informants would write first-person statements in their own words. That is not what happened in this case; instead, prison officials made third-person reports about the informants' statements, apparently paraphrasing the informants.

Be that as it may, petitioner's principal argument is that the informants' statements, be they first-

person or third-person, are "conclusory" rather than "factual" in violation of Rule IV (6).

The informants' statements in this case are as follows. A March 8, 1974 memorandum to the disciplinary committee from Assistant Superintendent Wahlstrom states:

"The following information has been received, independently, by D. W. Wahlstrom, Assistant Superintendent, R. E. Pribble, Director of Institution Security, and H. C. Cupp, Superintendent, from individuals whose information has proven reliable for, in some cases, a period of several years.

"1. On Wednesday, October 24, 1973, at approximately 6:00 a.m., Stephen Bekins [petitioner] and Paul Akins entered Randall Darrien's cell and participated in an assault on Darrien in which a knife and a piece of pipe were used. The motive for the attack stemmed from an incident at Rocky Butte jail in Portland in which Darrien had informed on an escape plot in which Bekins was reputedly involved. The stabbing was precipitated by a belief of Bekins that Darrien would soon be obtaining minimum custody and be leaving the penitentiary.

"2. Following the stabbing, Bekins discussed his and Akins' involvement in the assault with a few of his friends * * *."

A supplementary memorandum from Mr. Wahlstrom to the disciplinary committee, dated April 10, 1974, states in pertinent part:

"The committee should be aware that more than one informant has stated that they personally observed Bekins and Akins in Darrien's cell on October 24."

The committee's investigator talked with the prison officials who had received information from the informants. He reported to the committee:

"Mr. Cupp, Superintendent, stated that of all

the sources of information, which had contributed to his knowledge, in the case of Steve Bekins and Paul Akins, at least * * * of these informants were men whom he had known for several years and, in his opinion, were reliable informants. He said that he could not discuss these informants, or their supplied information, without placing * * * [them] in jeopardy.

"* * * * * *

"Mr. Pribble, Director of Institutional Security, stated that he * * * did not have any additional information to give to the Hearing Committee. He said that to the best of his knowledge, the informants in this case were reliable but [he] could not discuss them or their information.

"Mr. Wahlstrom, Assistant Superintendent, stated that to his knowledge, at least part of the informants * * * have proven to be reliable, over a considerable period of time but he said that he could not discuss them or the information received from them, without placing these informants in jeopardy.

"He said that he could give no additional information, to the Committee, because the group that engineered this incident, is so small and close knit, that any information he gave, would reveal to that group, the source of that information."

These informants' reports constituted the only evidence before the disciplinary committee that petitioner had assaulted another inmate.

Are these informants' reports "factual" rather than "conclusory" as required by Rule IV (6)? The procedural rules do not define "factual" or "conclusory" other than by implication when Rule IV (6)(b) refers to informants' statements in factual terms that are sufficiently specific so that the disciplinary committee can determine that the informants had personal knowledge of the matters contained in their statements.

Seemingly, this rule is designed to protect inmates from accusations not based on fact, an anonymous false charge being easy to make and difficult to refute.

■ Regardless, however, of the exact definition to be given to "factual" and "conclusory," the informants' reports in this case cannot be characterized as sufficiently factual. It is the disciplinary committee, not the prison administration, that is the ultimate finder of fact as to whether an inmate has violated a prison rule. *See,* Rule II (3) (a), supra. In order to discharge this duty, the disciplinary committee must be given sufficient factual data. When prison administrators simply reported to the committee in this case that petitioner "participated in an assault," this was too conclusory to permit the committee to make a reasoned decision based on factual data.

The prison administrators' concern that stating additional facts they had received from the informants would necessarily reveal the informants' identities may well be legitimate. However, the prison rules provide for this kind of problem. Rule VI (4) (c) provides that a disciplinary committee decision can, in some situations, be based on evidence that is not disclosed to the inmate:

> "If the institution determines that material contained in the record should not be revealed to the inmate, it shall indicate the material and the basis of the institution's determination."

Respondent's brief makes the following comments about the procedure contemplated by Rule VI (4) (c):

> "* * * [T]he basic problem involved in a case such as this one * * * [is that] revealing addi-

tional information will reveal the source. The security risk does not lie with the disciplinary committee, but with placing the information in written form for use by persons outside of the immediate ascertainable group of penitentiary personnel. Records are typed on appeal, made available to counsel for petitioner, and pass through several other phases. Any leak may endanger the survival of the informant and/or require confinement of the individual in 'protective custody' with its attendant loss of privileges * * *."

■■ Respondent's argument is persuasive. However, it is actually an argument in favor of changing the procedural rules governing prison disciplinary hearings, not an argument that establishes compliance with the existing rules in this case. The Corrections Division has statutory authority to promulgate and amend rules for the conduct of disciplinary hearings. ORS 421.180. Guided by favorable or unfavorable experiences under the existing rules, the Corrections Division can adopt new and different rules at any time. This may be such an instance. Our duty, by contrast, is merely to insure compliance with the rules in effect at the time of a disciplinary proceeding. *Moore v. OSP,* 16 Or App 536, 519 P2d 389 (1974); ORS 183.480 (7)(a).

■ We hold that the record in this case fails to establish compliance with the factual-statements requirement of Rule IV (6)(b) governing the use of informants' statements, as that rule now reads.

Petitioner's final contention is also well taken. The procedural rules provide that in some situations an inmate can be placed in segregation prior to a disciplinary hearing. When this is done, the rules state the inmate is in "holding status." At the conclusion

of a subsequent disciplinary hearing, consideration must be given to the time spent in holding status:

"In the event a resident is placed in holding status prior to a hearing the committee shall give consideration to the time spent by the resident in such status when final disposition of the reported misconduct is made." Rule V (3).

■ The final order of the disciplinary committee in this case does not indicate that the committee considered the fact that petitioner was in holding status for over two months before that order. Under Rule V (3), the order should have so indicated. Were this the only error, the appropriate remedy would be to remand for reconsideration of the sanction imposed. But because of the additional error it is necessary to reverse and remand for proceedings that fully comply with the applicable procedural rules.

Reversed and remanded.