Argued August 22, affirmed September 23, 1974

RONALD E. DRAGOO, *Petitioner v.* OREGON
STATE PENITENTIARY 3302 (03-74-079),
3303 (04-74-014), 3373 (03-74-096), 3374 (03-74-097),
*Respondent.*
526 P2d 637

[ 1 ]

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

We are called upon in this prison discipline case to reconsider our decision in *Bonney v. OSP,* 16 Or App 509, 519 P2d 383, Sup Ct *review allowed* (1974), in light of the United States Supreme Court's subsequent decision in *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974).

██ The questions in *Bonney* and *Wolff* concerned the minimum procedures required in prison disciplinary proceedings by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The answers in *Bonney* and *Wolff* were, broadly speaking, consistent. Due process does not require that an inmate be represented by counsel at a prison disciplinary hearing. *Bonney,* 16 Or App at 519; *Wolff,* 418 US at 569-70, 41 L Ed 2d at 959. Due process does not require that an inmate be able to confront adverse witnesses at a disciplinary hearing. *Bonney,* 16 Or App at 520-22; *Wolff,* 418 US at 567-69, 41 L Ed 2d at 957-58.

In two respects, however, petitioner here argues that *Bonney* is inconsistent with *Wolff.* First, Oregon's rules governing prison disciplinary proceedings, which we upheld in *Bonney,* do not permit an inmate to produce before the disciplinary committee testimony favorable to his position *through live witnesses.* Petitioner reads *Wolff* as holding he has the right to do so. Second, Oregon's rules are silent as to an inmate's rights to produce favorable documentary evidence. Petitioner argues this is also an essential right under *Wolff.* We believe the favorable-witnesses issue and favorable-documentary-evidence issue to be slightly different.

I

█ As to the production of favorable evidence *through live witnesses* before the disciplinary committee, we disagree with petitioner's reading of *Wolff* and adhere to our position in *Bonney.*

Consideration of the live-witnesses issue necessarily begins with an overview of the system created

by the procedural rules here challenged. A year before *Wolff* was decided the Oregon legislature determined that prison disciplinary proceedings should afford inmates "a reasonable opportunity for a fair hearing," and be subject to judicial review in this court. ORS 421.180-421.195. Pursuant to this legislative mandate, the Corrections Division of the Department of Human Resources established detailed procedural rules to govern disciplinary hearings.

The procedural rule germane to the present issue provides:

> "A resident has the right to submit questions to be posed by the committee to the person charging or other persons. The committee may give leave to submit further questions at the end of the hearing. All relevant questions will be posed by the committee." Rule IV (4).

As we have seen from the records in the numerous cases of this type that have come before us, in practice this rule means that an inmate has the right to pose questions to be asked any and all witnesses—be they favorable or adverse. The disciplinary hearing is then recessed and a member of the disciplinary committee or the committee's investigator goes to the persons designated by the inmate and asks the questions the inmate wants asked. The hearing is then reconvened and the committee member or investigator orally reports what he learned or submits a written report. In either case, the questions and answers—usually in summary narrative form—become part of the hearing record, either by being transcribed or made an exhibit.

Does this procedure comply with the requirements of *Wolff?* Petitioner argues it does not, relying on the following passage from *Wolff:*

> "We are also of the opinion that the inmate

facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process

Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents." 418 US at 566-67, 41 L Ed 2d at 956-57.

It is certainly difficult to read this extremely qualified language as establishing an absolute right to present the live testimony of favorable witnesses—the position petitioner urges. The fact remains, however, that *Wolff* seems to imply that live testimony will at least occasionally be presented, whereas the existing Oregon rules contemplate that live testimony will never be presented before the disciplinary committee.

■ We nevertheless conclude that the existing Oregon system is consistent with the underlying rationale of *Wolff*. We identify that rationale as being: in the unique context of prison discipline, the Constitution requires only some check on the possibility of totally arbitrary or capricious action by prison officials. This is apparent to us from: (1) the Supreme Court's critical reaction to the specifics of the Nebraska disciplinary system then before it—a system that, unlike Oregon's, did not even provide for advance written notice of alleged misconduct, see, 418 US at 563-65, 41 L Ed 2d at 955-56; (2) the inescapable conclusion that the Supreme Court has ruled that less "process is due" in prison discipline than in any other situation previously before the court; and (3) the court's repeated emphasis on the need for flexibility:

"* * * [T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." 418 US at 556, 41 L Ed 2 at 951.

"* * * [T]here would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the

criminal trial * * *." 418 US at 563, 41 L Ed 2d at 955.

"Our conclusion that some, but not all, of the procedures specified in Morrissey and Scarpelli must accompany the deprivation of good time by state prison authorities is not graven in stone. As the nature of the prison disciplinary process changes in future years, circumstances may then exist which will require further consideration and reflection * * *." 418 US at 571-72, 41 L Ed 2d at 960.

In sum, as the Supreme Court said in *Wolff,* "there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of" a sanction on an inmate, and "* * * [t]he touchstone of due process is protection of the individual against arbitrary action of government." 418 US at 571, n 19, 41 L Ed 2d at 960, n 19; 418 US at 558, 41 L Ed 2d at 952.

More specifically, the ultimate point in the passage from *Wolff* on which petitioner relies is: "the right to present evidence is basic to a fair hearing." 418 US at 566, 41 L Ed 2d at 956. The existing Oregon system, which we have previously stated is like "the familiar practice of depositions on written interrogatories," *Bonney,* 16 Or App at 522, does create "the right to present evidence." This system goes even further than required by *Wolff;* through "interrogatories" an inmate can present evidence from both favorable and adverse witnesses.

The question thus boils down to this: is it essential under *Wolff* that the "right to present evidence" be done only through the familiar technique of *live testimony* before the disciplinary committee. Remembering that we should not confuse the familiar

with the necessary, we think not. *Wolff* represents a curb on completely arbitrary action by insuring consideration of the inmate's version of the facts in dispute. Oregon's system accomplishes this goal. *Wolff* encourages flexibility—it might even be said "experimentation" in prison disciplinary procedures. If that flexibility is to have any meaning, it must be at least broad enough to enable Oregon to follow the system it has adopted.

Finally, *Wolff* repeatedly invites a balancing of interests. In having to present evidence through the existing system rather than through live testimony, the loss to an inmate, if any, is negligible. On the other hand, under this system, the gain to prison administration is great. Disciplinary hearings can be conducted more expeditiously, with less scheduling problems, and less disruption of the activities of fewer people in the prison environment. Much more importantly, the prison officials avoid what will inevitably be the major problems in implementing *Wolff*—distinguishing "favorable" from "unfavorable" witnesses, and protecting the identity of informants.

When a series of cases raising the same issue involved in this case were recently argued, we were told that a high percentage of prison discipline cases originate when one inmate anonymously informs officials of another inmate's infractions. When an inmate is charged with misconduct, and he knows that no guards could have witnessed it, it requires little imagination for him to deduce that another inmate had reported his conduct. What if the inmate in such a situation requests that the few other inmates who might have witnessed his misconduct be brought into the hearing as "favorable" witnesses? In many situ-

ations this would likely expose the informant's identity, leading to the possibility if not the probability of violent reprisals. In all situations, such procedures would put the anonymous informant in a very difficult situation, to say the least.

■ Admittedly, Oregon's present system creates some of the same risks of indirect disclosure of an informant's identity. But Oregon's is a more flexible, *Wolff,* supra, system, thereby minimizing these risks as much as possible, consistent with due process requirements.

II

*Wolff's* requirement that inmates be permitted to present favorable documentary evidence might require striking a different balance of the relative interests. If documentary evidence did in fact exist that was favorable to an inmate's position, and if he were not allowed to bring it before the disciplinary committee, the loss to the inmate would be obvious and substantial. On the other hand, there would appear to be much less danger of institutional disruption in permitting the presentation of documentary evidence than the presentation of live witnesses. We add that one major exception would be documentary evidence which might directly or indirectly disclose the identity of an anonymous informant.

The Attorney General has pointed out in some of the cases involving this same issue that the prison rules do not in any way prohibit an inmate from presenting documentary evidence, and that the prison officials are well aware of the requirements of *Wolff.* We also note that the record in this case does not indicate that petitioner sought to present any documentary evidence or, indeed, that any existed.

Therefore, because of the somewhat equivocal position now asserted by the Attorney General, and the absence of a record that makes this documentary-evidence issue in any way outcome-determinative, we decline to resolve it at this time. We will resolve it if and when a case comes before us in which the inmate sought to introduce documentary evidence but was turned down by the disciplinary committee without any legitimate reason, such as the protection of an informant's identity.

Affirmed.