Argued September 9, affirmed September 26, 1974

EARL JUNIOR BONNEY, *Petitioner, v.*
OREGON STATE PENITENTIARY, *Respondent.*
526 P2d 1020

*Charles N. Hilke,* Marion-Polk Legal Aid Service, Inc., Salem, argued the cause for petitioner. With him on the briefs were Victor C. Pagel, Marion-Polk Legal Aid Service, Inc., Salem, and Stanley A. Sitnick, Legal Aid Service, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and SLOPER, Justices.

HOLMAN, J.

Petitioner is an inmate of the Oregon State Penitentiary (OSP). He sought review by the Court of Appeals of a decision by the disciplinary committee of the OSP, which was approved by the Superintendent, placing petitioner in segregation for violating the rules of conduct of the institution. The charge was that in the process of being transferred from a private hospital back to the OSP he forcefully resisted, cursing the guards and threatening to kill them. The Court of Appeals affirmed the action of the disciplinary committee resulting in the petitioner's being placed in segregation for six months. 16 Or App 509, 519 P2d 383 (1974).

This court granted review to interpret the new statutes relating to inmate discipline,[1] and the Procedures for Disciplinary Action Within Correctional Institutions and Major Rules of Conduct[2] adopted pursuant to such statutes. Also, between the time of the Court of Appeals' opinion and the granting of review by this court, the United States Supreme Court decided the case of *Wolff v. McDonnell*, — US ——, 94 S Ct 2963, 41 L Ed 2d 935 (1974), which delineated the minimal due process rights of a disciplined inmate in a state institution under the provisions of the Fourteenth Amendment to the United States Constitution.

The questions involved are divided into two sections: 1) a disciplined inmate's right under Oregon statutes, and regulations promulgated pursuant to those statutes, and 2) his due process rights under the Fourteenth Amendment to the federal constitution and

---

[1] ORS 421.180, 421.185, 421.190, 421.195, enacted by Oregon Laws 1973, ch 621, Sections 4, 5, 6 and 7, respectively.

[2] Oregon Administrative Rules, Sections 10.005 through 10.050, effective November 1, 1973.

the Oregon Constitution, Art I, § 10. While the petition for review, at least by inference, raises many questions, we are limiting our attention on review to the principal questions raised, which are: 1) an inmate's right to counsel or counsel substitute; 2) his rights to confrontation and cross-examination of witnesses; and 3) his right to call and present witnesses.[9]

Petitioner first contends that he was not allowed the right to representation during his disciplinary procedure which is afforded under the Oregon statutes. The appropriate statute is ORS 421.185, which is as follows:

> "The procedures adopted pursuant to ORS 421.-180 shall provide that an inmate shall be entitled to assistance and representation under terms and conditions established by the division. Nothing in this section shall be construed to limit the authority of the division to designate persons eligible to assist and represent the inmate."

The corresponding regulation, Oregon Administrative Rules, Section 10.020 (2), states:

> "Representation. In a disciplinary committee hearing, upon a showing of need based upon consideration of language barriers, competency and capacity of the resident in relation to the charge or surrounding circumstance, provision may be made for assistance by a representative of the resident in the interest of a fair hearing. Such representation may be by a member of the staff or a volunteer resident."

---

[9] Because the punishment inflicted was six months in segregation we could rule that the question is moot as this time has expired during the appellate procedure. However, we do not choose to so dispose of the matter because of the present importance of the questions involved. There are presently being filed in the Court of Appeals approximately 20 appeals monthly from disciplinary matters in Oregon's penal institutions.

The petitioner was not afforded representation at his hearing and he contends that this was a violation of his statutory right. He also contends, of course, that because the regulation did not mandate representation for him, it did not comply with the requirements of the statute.

Petitioner also contends that he was not afforded his statutory right to confront and cross-examine the witnesses against him and that he was not afforded an opportunity to call witnesses on his own behalf. The appropriate statute is ORS 421.190, which is as follows:

> "Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedure and the division shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing."

The corresponding regulation is Oregon Administrative Rules, Section 10.020 (4), which is as follows:

> "Proposed Questions. A resident has the right to submit questions to be posed by the committee to the person charging or other persons. The committee may give leave to submit further questions at the end of the hearing. All relevant questions will be posed by the committee."

The petitioner was not afforded the right to confront or cross-examine the witnesses against him, nor was he allowed to call witnesses on his own behalf and he, likewise, contends these restrictions were violations of his statutory rights and that the regulation is not in conformance with the requirements of the statute because it did not extend these rights to him.

We believe it will be helpful to discuss these

contentions together. It is first necessary to relate some legislative history in order to properly construe what the legislature intended by its statutory enactments.

Inmates of Oregon penal institutions were contending that the Corrections Division was subject to the rule making and contested-case provisions of the Oregon Administrative Procedures Act (APA).[4] Apparently concluding that the contentions were well taken, the Corrections Division applied to the Governor for an exemption under ORS 183.315.[5] The Governor granted a partial exemption in conformance with that statute and specified alternative procedures which were to be followed. The alternative procedures were similar to those rules subsequently adopted and which are presently in effect and set forth above from Oregon Administrative Rules. Under the statute the ex-

---

[4] ORS Chapter 183.

[5] ORS 183.315 provides in part:

"* * * * *

"(4) Upon application of any agency, the Governor may, [sic] exempt any agency rule or order or class of rules or orders from a requirement of ORS 183.310 to 183.500, when:

"* * * * *

"(b) The Governor has found that conformity with such requirements of ORS 183.310 to 183.500 would be so inconvenient or impracticable as to defeat the purpose of the rule or order, and is not in the public interest, in light of the nature of the rule or order and in light of the enabling act or other laws affecting the agency.

"(5) When the Governor exempts an agency from a requirement of ORS 183.310 to 183.500 pursuant to subsection (4) of this section, he shall establish alternative procedures for the agency action consistent, in so far as possible, with the intent and purpose of ORS 183.310 to 183.500.

"* * * * *

"(b) An exemption, and any alternative procedure prescribed shall terminate upon the adjournment of the next regular legislative session after issuance of the exemption."

emption and alternative procedures expired with the adjournment of the 1973 Legislative Assembly and, if no statutory changes were made, it was contemplated that the procedures would revert to compliance with the APA.

Two bills were introduced during the 1973 legislative session to deal with the matter, SB 376 and SB 467. SB 376 tended to be closer to the requirements of the APA than SB 467, which was similar to the alternative procedures established by the Governor which were to expire at the end of the session. When hearings were had there was a divergence of testimony, with a law professor and the ACLU favoring SB 376 and the attorney general favoring SB 467. As a result of the conflict SB 467 was tabled. Thereafter, a compromise was effected and SB 467 was taken off the table and the present statutes set forth above resulted. ORS 421.180 to 421.195.

From this history the petitioner makes the logical deduction that rights in excess of the present rules were contemplated by the newly enacted statutes because the present rules are substantially the same as the procedures originally required by the Governor and which were the basis for the original provisions of SB 467 which was tabled.

Much discussion was had before the Senate committee of the then existing condition of the case law interpreting the requirements of constitutional due process. The committee was faced with conflicting interpretations, yet it wanted to comply with the constitutional requirements of due process, whatever they were. Particularly, it was faced with decisions of the United States District Court for the District of Oregon which, while not directly in point, seemed to fore-

bode stricter requirements than the procedures established by the Governor, and with which stricter requirements the legislature would probably have to comply. The result was some ambiguous statutes, drawn in general terms, which were the result of a compromise. They are short on specifics and long on generalizations, and it must have been realized that they would be subject to court interpretation which would probably be affected by whatever ultimate constitutional answers appeared when the dust had finally settled. We cannot escape the feeling that the legislature was attempting and intending to comply with minimum due process, whatever the courts decided that was and which was unknown to the legislature at that time.

■■ Nothing is said in the statutes about confrontation and cross-examination, nor is anything said about the inmate presenting witnesses. There is only the requirement of a "fair hearing," which is nothing more than due process. The statutes do require that "an inmate shall be entitled to assistance and representation under terms and conditions established by the division." If these words are read with the preconception that the right to representation attaches when conditions exist which are enumerated by the division, then the statute says the inmate's right to representation is allowed only under those conditions established by the division. On the other hand, if it is read with the preconception that an absolute right to representation is afforded, then it says the inmate has an absolute right to representation. Without a clear directive by the legislature we are reluctant to say an inmate has an absolute right to some sort of representation unless a "fair hearing" actually gives him a right of confrontation, cross-examination and presenta-

tion of witnesses. These are the parts of a hearing in which representation is most valuable. This is a subject to which we will now pass.

By its decision in *Wolff v. McDonnell,* supra, the United States Supreme Court has gone a long way in solving the federal due process problems surrounding discipline of inmates. That Court held that an inmate in a state institution is a "person" whose interest in disciplinary proceedings constitutes "liberty" within the due process clause of the Fourteenth Amendment. The full panoply of rights due a defendant in a criminal proceeding is not applicable, but some minimal procedures are required when an inmate faces "a major change in the condition of [his] confinement." The Court stated as follows:

"* * * Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." 41 L Ed 2d at 935.

■■ Written notice of the charges must be given to the inmate no less than 24 hours before his hearing. There must be a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action, excepting therefrom situations in which personal or institutional safety will be threatened by such recitation.

The Court also held an inmate should be allowed to call witnesses and present documentary evidence in his defense in situations in which permitting him to do so will not be "unduly hazardous" to safety or correctional goals. The Court remarked that "unrestricted right to call witnesses from the prison popu-

lation carries obvious potential for disruption" and that prison officials "must have the necessary discretion to * * * refuse to call witnesses that may create a risk of reprisal or undermine authority * * *."⑨ The Court further said:

"* * * Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace * * *.

"* * * [T]he basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process." 41 L Ed 2d at 954.

█ Confrontation and cross-examination of adverse witnesses are not required by the federal constitution. The Court remarked that if this were allowed, as it is in criminal trials, "there would be considerable potential for havoc inside the prison walls" and "[p]roceedings would inevitably be longer and tend to unmanageability." The Court also said,

"* * * To some extent the American adversary trial presumes contestants who are able to cope with the pressures and aftermath of the battle, and such may not generally be the case of those in the prisons of this country * * *." 41 L Ed 2d at 958.

The Court held that inmates have no right to either retained or appointed counsel because the trained combativeness of such counsel is inappropriate to a proceeding within a prison. However, the Court said:

"Where an illiterate inmate is involved, how-

⑨ The Court further remarked that it would be helpful as an aid to review if the hearing body stated its reasons for refusal to call witnesses.

ever, or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff * * *." 41 L Ed 2d at 959.

Lastly, the Court held that the proceeding must be held before an impartial tribunal. A committee composed of various prison officials was approved in *Wolff* as an impartial tribunal.

■ Having decided it was the intention of the legislature by its statutory enactments to bestow minimal due process, it remains for us to compare the rights granted by the Oregon Administrative Rules under these statutes with the *Wolff* requirements to see if it has been afforded. First, it would appear that the provision of Section 10.020 (4) falls short of the *Wolff* requirements if the regulation is interpreted, as we believe it is, to prohibit calling live witnesses under *all* circumstances and to limit the right of the inmate to requesting the committee to have someone pose questions out of his and the committee's presence to persons he wishes to testify. The Court in *Wolff* stated that the inmate should be allowed to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals.

■ When the requested witness is shown likely to have relevant evidence, when his live testimony would not pose a threat to institutional safety or correctional goals, and when his testimony would not tend to unduly prolong the hearing or make it unmanageable, consid-

ering the hearing is being held in a penal institution and not a court, the inmate should be allowed to present live witnesses. Documentary evidence would seem to pose no problem in any event.

■ In almost all circumstances witnesses who work or are incarcerated within the institution could not be called. If the inmate seeks to call as witnesses inmates or guards A, B and C, and A and B testify but C does not, the finger has been put on C as unfavorable to the inmate and his position within the institution is made more difficult and, if an inmate, he has been placed in real danger. However, in isolated instances, some persons who are not a part of the institutional milieu may have valuable information and if none of the reasons for excluding live testimony apply, the inmate should be allowed to call them.

■ Even after a showing of need has been made by the inmate, Section 10.020 (2) would appear to say that representation remains within the discretion of the committee. A situation can exist in which, by reason of illiteracy, mental limitation or defect, or the complication of the situation, representation by another inmate or staff member must be granted to comply with *Wolff*.

■ Except for the two above-mentioned situations, the Oregon Administrative Rules would appear to comply substantially with the minimal due process requirements of *Wolff*. We are aware that we may, and sometimes do, interpret the Oregon constitutional due process provision to bestow greater rights than those afforded by the Fourteenth Amendment to the federal constitution. However, for the reasons stated in the opinion in *Wolff*, many of which have been quoted or repeated here, in the inmate hearing context we choose

to interpret Oregon's constitutional due process provision as mandating no greater rights than does the Fourteenth Amendment as interpreted by *Wolff*.

▉ Insofar as the petitioner is concerned, the above-mentioned defects in the Oregon Administrative Rules affect him not at all. The two witnesses to the claimed infraction were both guards and presentation of their testimony at the hearing and their cross-examination could not be insisted upon in the exercise of the inmate's due process rights for the reasons set forth in *Wolff* and this opinion. He asked for no other witnesses. Also, there was nothing about the petitioner or the hearing which mandated representation for him. He does not claim to be illiterate, to be subject to any mental limitation or defect, nor was the situation complicated.

The denial of the inmate's petition by the Court of Appeals is affirmed.