532 P.2d 798 (1975)
Richard L. CURTIS, Petitioner,
v.
OREGON STATE CORRECTIONAL INSTITUTION, Corrections Division, Respondent.
Court of Appeals of Oregon.
Argued and Submitted January 21, 1975.
Decided March 10, 1975.
Rehearing Denied April 16, 1975.
Review Denied May 20, 1975.
Charles N. Hilke, Salem, argued the cause for petitioner. With him on the brief was Michael K. Friel, Director, Marion-Polk Legal Aid Service, Inc., Salem.
Scott McAlister, Asst. Atty. Gen., Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
Before LANGTRY, P.J., and FORT and THORNTON, JJ.
THORNTON, Judge.
This is an appeal from a disciplinary order of the Superintendent of the Oregon State Correctional Institution (OSCI). The disciplinary committee, after a hearing, found that petitioner had violated Major Rule 8 (Destruction of Property). The recommendation of the committee and *799 the order of the superintendent resulting therefrom was (1) 10 days in segregation, (2) loss of 60 days' statutory good time and (3) assessment against petitioner of one-half the cost of repair or replacement of the tires found by the disciplinary committee to have been damaged or destroyed. He appeals.
Petitioner's first contention challenges the sufficiency of the evidence to support the finding of willful destruction of the tires. Our review of the findings of fact is limited to the existence of substantial, reliable and probative evidence in the whole record. Bonney v. OSP, 99 Or.Adv.Sh. 1838, 526 P.2d 1020 (1974); Fowler v. OSCI, 18 Or. App. 1, 525 P.2d 191 (1974); ORS 183.480(7)(d). Here the evidence was clearly sufficient. There was evidence that petitioner had admitted, in the presence of another inmate, that he had punctured one of the tires, and he was identified by two other inmates, jointly charged with him, as having punctured the tires while participating in a cleanup work detail with them on the institution's grounds. Other physical and circumstantial evidence is more than "substantial" to support the finding. There is no merit in this assignment.
Petitioner's second contention is that neither the disciplinary committee nor the superintendent had authority to require him to make restitution for "one-half of the repair or replacement cost of the tires destroyed."
We begin our consideration of this contention by reviewing the pertinent statutes and administrative regulations.
The authority to impose punishment upon inmates of the Oregon State Penitentiary and the Oregon State Correctional Institution is derived from the following:
ORS 179.360, which provides:
"(1) Each superintendent shall:
"(a) Have control of the wards of the state at the institution under his jurisdiction.
"(b) Direct the care, custody and discipline of such wards unless otherwise directed by law or by rule of the division.
"(c) Adopt sanitary measures for the health and comfort of such wards.
"(d) Promote the mental, moral and physical welfare and development of such wards.
"(e) Enjoy the other powers and privileges and perform the other duties that are prescribed by law or by rule of the division or that naturally attach themselves to his position.
"* * *."
ORS 421.016(2), which provides:
"The Superintendent of the Oregon State Correctional Institution shall be the chief executive officer of the correctional institution."
ORS 421.016(4)(c), which provides:
"(4) The superintendents:
"* * *
"(c) May each prescribe rules for the government of the inmates, subject to the approval of the administrator."
ORS 421.105(1), which provides:
"The superintendent may enforce obedience to the rules for the government of the inmates in the institution under his supervision by appropriate punishment but neither the superintendent nor any other prison official or employe may strike or inflict physical violence except in self-defense, or inflict any cruel or unusual punishment."
In 1973 the legislature added a new procedural statute, which provided in part as follows:
"The division shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. The procedures adopted shall be subject to the approval of the Governor." ORS 421.180.
Thus, we glean from the above provisions that the superintendent has authority under ORS 421.105(1) to enforce obedience within the institution; that in doing so he *800 must (1) prescribe rules of conduct pursuant to ORS 421.016(4)(c), which shall be approved by the administrator of the Corrections Division, and (2) follow procedures adopted by the Corrections Division pursuant to ORS 421.180.
Following the enactment of the 1973 statute (ORS 421.180) the Corrections Division on November 11, 1973, adopted its "Procedures for Disciplinary Action within Correctional Institutions" and "Major Rules of Conduct." It is with a violation of Major Rule 8 of these rules that petitioner was charged and found guilty by the disciplinary committee.
The above entitled rules of procedure provide for the establishment of a disciplinary committee in each institution whose powers are limited to:
"a. Determining at a hearing if any of the rules for inmate conduct have been broken by a particular inmate, and, if so,
"b. Imposing remedial treatment or sanctions in accordance with this code." Rule II(3).
It appears from the foregoing that the rules of procedure, in addition to dealing with procedural matters, also deal with some substantive matters such as punishment, viz., empowering disciplinary committees to impose "remedial treatment or sanctions in accordance with this code."
It is also plain from an examination of the statutes previously quoted that the superintendent of each institution has basic authority to impose "appropriate punishment" in connection with his statutory duty to "enforce obedience to the rules for the government of the inmates in the institution under his supervision * * *." ORS 421.105(1).
Petitioner argues that nowhere in the "Procedures for Disciplinary Action within Correctional Institutions" or the Oregon Revised Statutes is there a specific provision authorizing either the disciplinary committee or the superintendent of the institution to impose a requirement of restitution; that under the principle of statutory construction inclusio unius est exclusio alterius (inclusion of one is the exclusion of others), the listing of specific enumerated sanctions in the rules of procedure (Rule V) means the exclusion of all forms of punishment not specifically enumerated. The state counters this by arguing that restitution is a type of "remedial treatment" which the disciplinary committee is authorized to impose under Rule II(3) (b), quoted above.
Petitioner's second contention cannot be sustained for the following reasons:
First, we conclude that the disciplinary committee is authorized to require petitioner to make restitution as a form of "remedial treatment." Under the rules of procedure the disciplinary measures which may be imposed by the superintendent through the disciplinary committee are divided into two categories: (1) "remedial treatment" and (2) "sanctions." It is only with reference to the "sanctions" that the discretion of the disciplinary committee and the superintendent is specifically circumscribed by the rules. Also in this same connection we note that judicial review by this court under ORS 421.195 is provided only where certain specifically enumerated sanctions have been imposed. "Remedial treatment" is not defined in the rules. The use of this term in the disjunctive with the term "sanctions" would indicate that the "remedial treatment" contemplated by the Corrections Division, which drafted these rules, was something different from "sanctions."
Webster's New International Dictionary (2d ed. 1961) defines the term "remedial" as:
"Affording a remedy; intended for a remedy, or for the removal or abatement of an evil; as, remedial treatment.",
and the term "treatment" as:
"Act, manner, or an instance, of treating, esp. of treating a person or animal, a patient, subject, or a substance, as in processing; handling; usage; as, unkind treatment of a child; to require medical treatment."
*801 Applying the dictionary definitions for the words "remedial" and "treatment" would lead us to conclude that remedial treatment includes any of a wide range of measures (short of impermissible, cruel and unusual punishment) tending to correct or improve the inmate's conduct in the area involved.
Second, even if the restitution portion of the disciplinary committee's order were deemed to be beyond the powers of the disciplinary committee, the order would still be valid under the superintendent's basic statutory disciplinary powers. As we have already indicated, we are satisfied that the superintendent has authority to require restitution under his statutory power to "[d]irect the care, custody and discipline * * *" "* * * of the wards of the state at the institution under his jurisdiction" (ORS 179.360), and to "enforce obedience to the rules for the government of the inmates in the institution under his supervision by appropriate punishment * * *" (ORS 421.105(1)). Further, he is authorized under ORS 179.360(1)(b) and Rule II, "Procedures for Disciplinary Action within Correctional Institutions," to delegate to the institution's disciplinary committee the task of hearing and determining if the charges against petitioner were true. Under this view, the restitution order of the disciplinary committee would be construed as a recommendation only to the superintendent, which was subsequently adopted by the superintendent by his order approving the punishment previously imposed by the disciplinary committee.
Affirmed.
LANGTRY, Judge (concurring).
I agree that the evidence supports the findings that petitioner damaged the tires and that sanctions should be imposed upon him. However, I would by-pass the ponderous statutory interpretation leading to the conclusion that petitioner can be required to make restitution for the tires as a part of the sanctions. I would do this by holding that the superintendent of the institution can do this by his order based simply upon this language:
"(1) Each superintendent shall:
"* * *
"(e) Enjoy the other powers * * * that naturally attach themselves to his position." ORS 179.360(1)(e).
The superintendent has the duty to supervise and protect the state's property in the institution, as well as its inmates. It is a product of a natural power in administering these dual duties for the superintendent to require an inmate to restore petty damage resulting from his vandalism.
FORT, Judge (concurring in part, dissenting in part).
I concur that there is sufficient evidence to support the finding that the prisoner engaged in the wilful destruction of tires as charged.
For the reasons hereinafter stated, I do not agree that the superintendent or the disciplinary committee had authority on the basis of this record to require that the prisoner make restitution.
Here the findings of fact are silent concerning the value, if any, of the tires damaged or destroyed. Examination of the transcript discloses no evidence relating to that matter. Neither the disciplinary committee nor the superintendent in their respective orders set forth any amount the prisoner is required to pay, nor, as stated, is there any evidence to support it if the order had so stated, nor is any procedure established for its determination.
Thus in my view it is unnecessary to decide whether, in a disciplinary proceeding pursuant to ORS 421.180 to 421.195, authority is granted to the superintendent to require restitution under ORS 179.360, or as a sanction under either Rule V(1)[1] or *802 Rule VI(3)[2] of Procedures for Disciplinary Action within Correctional Institutions, or as "remedial treatment" under Rule II(3).[3] I would accordingly reserve decision on the second point decided by the majority until the question is squarely presented.
Since, however, the court has here elected to decide the question, I wish to express my dissent therefrom for the reasons hereinafter stated.
The court and the concurring opinion conclude the superintendent has authority under ORS 179.360 to order a prisoner to make restitution, although conceding there is no such express authorization therein.
It has been urged that the general power of the superintendent is analogous to the authority of a circuit judge in a criminal case to require restitution as a condition of probation. This argument in my view is fallacious for at least two reasons. ORS 137.540(10) provides expressly that in imposing probation the judge may order that the defendant:
"Make reparation or restitution to the aggrieved party for the damage or loss caused by offense, in an amount to be determined by the court."
Thus not only is the sentencing judge given express authority to require restitution but the statute directs that the court determine the amount.
Furthermore, both the amount and the imposition of the condition are required to be determined in a judicial proceeding. And finally, the enforcement of the provision through the power to revoke the probation and the procedures requisite *803 therefor are expressly provided in ORS 137.550, and must be done in a judicial proceeding.
Juvenile proceedings are civil in nature. ORS 419.474(1). ORS 419.507(1) provides:
"* * * Restitution for property taken, damaged or destroyed by the child may be required as a condition of probation."
There too the existence of the power is expressly granted to the court. Thus the legislature in the context of both a criminal and a civil proceeding has seen fit to provide expressly when the right to require restitution from a person in custodio legis is to be allowed, and what sanctions, if any, may follow from noncompliance therewith and the procedures requisite to the imposition thereof. I find this highly persuasive in construing ORS 179.360 and would conclude that had the legislature intended the superintendent to have the power to order restitution here, it would have said so.
Thus I do not agree that in construing the meaning of both ORS 421.180 and Rule II(3)(b) it is proper to reject consideration of the rule of statutory construction described by the court as inclusio unius est exclusio alterius.
Independently of ORS 179.360, the court also concludes that the disciplinary committee had the power under Rule II(3)(b) to require restitution as "remedial" treatment.
ORS 421.180 authorizes the Corrections Division to "adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. * * *"
Pursuant to this authority the Division in Rule V(1) has set forth at length what by way of disposition the disciplinary committee may impose by way of sanctions. Nothing in that rule authorizes entry of an order of or describes a procedure for the exaction of restitution nor a method for the determination of the amount thereof. The state concedes that the rules are otherwise silent thereon.
Rule II(3), relied upon by the majority, in defining the powers of the disciplinary committee limits its powers to:
"b. Imposing remedial treatment or sanctions in accordance with this code."
Pursuant to ORS 421.180 the Corrections Division has promulgated rules. It is obvious these relate only to sanctions. The majority then holds that this covers anything short of imposition of cruel and unusual punishment "tending to correct or improve the inmate's conduct in the area involved."
Oregon Constitution, Art. I, § 15, states:
"Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."
One clear import from it is that sanctions or other impositions imposable by law upon the convicted offender have as a major objective his reformation  and thus are remedial in purpose.
Under the majority's definition it seems to me "remedial" is at least as much subject to attack on grounds of vagueness as was former ORS 167.210, which was condemned as void for vagueness in prohibiting "any act which manifestly tends to cause any child to become a delinquent child." State v. Hodges, 254 Or. 21, 23, 457 P.2d 491, 492 (1969).
Here, if the Corrections Division had intended that the disciplinary committee, or the superintendent pursuant to its recommendation, have authority to require restitution, it would have so provided. Neither in Rule V(1) nor, so far as I am aware, in any of its rules has it chosen to do so. As with any statute or regulation imposing sanctions or consequences, one of the purposes of Rule V(1) is to advise *804 an inmate of the nature and extent of what can happen to him if he violates established rules. Nothing in Rule V(1) tells an inmate that restitution may be required of him nor under what circumstances it may be imposed or its amount determined. Whether viewed in that light the court's opinion is consonant with principles of due process required in disciplinary proceedings under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Bonney v. OSP, 99 Or.Adv.Sh. 1838, 526 P.2d 1020 (1974), I do not find it necessary to consider.
Here the Corrections Division in its rules adopted under ORS 421.180-421.195 nowhere authorizes restitution either as a sanction or as "remedial."
In Bonney v. OSP, 16 Or. App. 509, 519 P.2d 383, aff'd 99 Or.Adv.Sh. 1838, 526 P.2d 1020 (1974), and Fowler v. OSCI, 18 Or. App. 280, 525 P.2d 191 (1974), wide latitude was extended to the Corrections Division in providing rules authorized under ORS 421.180. We held there that a necessary corollary to that is insistence that it comply with its own rules. That does not mean, however, that this court should uphold as authorized acts or procedures not reasonably inferable from the rules it has adopted or from the statute itself.
Finally, in view of the concurring opinion of Langtry, J., it is difficult for me to identify what the court's holding here is. If I correctly understand the concurring opinion, it upholds the ordering of restitution in an ORS 421.180 proceeding on the basis that it makes no difference whether it can be ordered in a disciplinary proceeding. The superintendent can do it on his own under ORS 179.360(1)(e).
Thus it seems to me it implies the superintendent was right in ordering restitution but for the wrong reason. I do not understand that to be the holding of the court's opinion.
Accordingly, I respectfully dissent.
NOTES
[1] Rule V(1) of Procedures for Disciplinary Action within Correctional Institutions provides:

"DISPOSITION (WHAT THE COMMITTEE MAY DO)
"Sanctions
"The committee may find the resident did not commit the misconduct, in which case he shall be returned to the same status and privileges as before he was charged. If the committee finds the resident did not commit the misconduct, the report will be processed and recorded with final action subject to the superintendent's review. The reporting employe will be promptly notified of the committee's disposition.
"The committee may impose discipline sanctions of the following order in accordance with the rules of the institution. Sanctions imposed for refusal to obey a direct order will be based on the reasonableness of the order.
"a. Issue a reprimand to the resident including an appropriate delineation of expected future conduct.
"b. Restrict privileges with written instructions as to the length of restrictions and precisely which privileges are restricted.
"c. Temporary or permanent change in programming, i.e., work assignment, housing, educational plan or any other facet of specific programming.
"d. Confiscation of contraband.
"e. Place the resident in isolation status and set a maximum period the resident will remain in isolation status.
"f. Place the resident in segregation status and set a maximum period the resident will remain in segregation status.
"g. Recommend reprogramming of the resident's probable release date by indication of a reduction in the probable suggested allowance of good time reported by the Corrections Division to the Governor.
"h. Suspend imposition of any of the above informing the resident of expected conduct to avoid imposition.
"i. A combination of `a' through `h'."
[2] Rule VI(3) of Procedures for Disciplinary Action within Correctional Institutions provides:

"Superintendent's Review
"The superintendent shall personally review each case within a reasonable time thereafter and he shall:
"a. Affirm the sanction or order recommended by the decision, if he is in agreement with the disciplinary committee; or
"b. Modify the sanction or order recommended by the committee if he disagrees with appropriateness of the committee's decision; or
"c. Direct that no sanction or order be imposed when he disagrees with the decision.
"d. The superintendent shall have the power to increase the sanction imposed. When he does so, he shall state in writing his reasons why and immediately inform the resident, the disciplinary committee and reporting employe of his action and reasons."
[3] Rule II(3) of Procedures for Disciplinary Action within Correctional Institutions provides:

"Committee Powers
"The powers of the disciplinary committee shall be limited to
"a. Determining at a hearing if any of the rules for inmate conduct have been broken by a particular inmate, and, if so,
"b. Imposing remedial treatment or sanctions in accordance with this code."