Argued February 21, affirmed April 7, reconsideration denied
May 14, petition for review allowed June 24, 1975

STEPHEN BEKINS, *Appellant, v.*
CUPP (No. 83914), *Respondent.*
533 P2d 817

*Don S. Dana,* Salem, argued the cause and filed the brief for appellant.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

This is a proceeding in habeas corpus. Pursuant to petition a writ of habeas corpus was issued on March 12, 1974, by the Circuit Court for Marion County. After hearing on May 14, 1974, the petition was dismissed by the circuit court on October 21, 1974, "with petitioner obtaining no relief."

The facts stipulated at petitioner's hearing on

May 14, 1974, are that petitioner was placed on investigative status in segregation and isolation on July 8, 1973, when a knife, handcuff key and LSD were discovered in petitioner's cell. He was notified within 24 hours of the time he was placed in investigative status the reason for that placement. An investigation was conducted by the Oregon State Police. No disciplinary charges were placed against him and he was retained in segregation and isolation in an investigative status until September 7, 1973, approximately 60 days, when he was returned to the prison population. Petitioner does not claim that he desired or requested that disciplinary charges be placed against him nor does he point to any rule requiring that disciplinary charges be placed against an individual on investigative status.[1]

On October 29, 1973, petitioner was thought to be involved in the stabbing of another inmate. An investigation was conducted by the Oregon State Police and petitioner was placed in segregation on investigative status. No disciplinary charges were preferred against him and he was returned to the general prison population at the expiration of about 30 days. Likewise in this instance, petitioner does not claim that he desired or requested that disciplinary charges be placed against him nor does he point to any rule requiring that disciplinary charges be brought against an individual placed on investigative status.

At the habeas corpus hearing counsel for defendant, without objection, explained the difference between investigative status and punishment status:

"* * * [B]asically, they are full visiting privileges, some more canteen items; but concededly,

[1] Since sanctions for disciplinary violations can include, inter alia, loss of "good time," it is understandable that a petitioner, knowing that disciplinary charges had not been placed against him but, rather, that he was being held in an investigative status, would not request that such charges be brought against him.

he's limited in the number of things he can get when compared to the general population."

Counsel also explained the procedure followed in the institution:

"* * * [P]etitioner has not been treated any different with respect to being placed in investigative status than any other inmate in a similar circumstance. In other words, this is the general procedure followed by the institution. There is no hearing. It's reviewed by the assistant superintendent, the superintendent and the corrections division. And he is notified of the reason that he's being put in the cell. * * *"

■ We have previously held that habeas corpus is available in Oregon to test the constitutionality of treatment afforded an inmate. *Newton v. Cupp,* 3 Or App 434, 437, 474 P2d 532 (1970). In the present case, however, we perceive no constitutional violation.

■ The superintendent urges that habeas corpus does not lie in this case because petitioner's segregation for investigative purposes had been terminated prior to the filing of his petition for writ and the matter is thus moot. However, the petitioner has alleged that the actions of the superintendent amount to a course of conduct subjecting him to cruel, unusual and harsh punishment and his petition seeks injunctive relief against future proceedings. We have reviewed the record and find no evidence of any violation of the constitutional rights which protect petitioner from cruel and unusual punishment. There was evidence in both instances that petitioner was placed in segregation and isolation during the investigation by the Oregon State Police because he was considered to be a threat to the good order and the security of the institution on account of his past record and the nature of the charges being investigated. In each instance he was advised within 24 hours of the reason for that placement. The superintendent of the penitentiary is

charged with the safe custody of all of the prisoners within his institution. ORS 421.016(4)(a). *See also Curtis v. OSCI*, 20 Or App 530, 532 P2d 798, Sup Ct *review denied* (1975). Placement of those in his charge must, so far as possible, be left within the authority of the superintendent unless he violates a constitutional right of a prisoner or fails to follow the rules and regulations of his institution. We agree with the finding of the circuit court in this case that, "*   *   * the placements were reasonable, under the circumstances, and within the appropriate authority of the prison officials and did not deny petitioner any constitutional rights."

■ Petitioner also assigns as error the trial court's ruling that a third placement in segregation and isolation based upon a disciplinary proceeding which was on administrative appeal to this court was not properly before the court. The trial court was correct. Any error in connection with that proceeding was subject to challenge by appeal, ORS 421.195, and thus not properly cognizable in this proceeding.

■ Petitioner's final assignment is the denial of access to certain law books. He produced no evidence that lack of these law books operated to deny him any constitutional rights. Under such circumstances habeas corpus is not appropriate. *See Slopak v. Cupp*, 14 Or App 512, 513 P2d 531, Sup Ct *review denied* (1973).

Affirmed.

FORT, J., dissenting.

It is my understanding that ORS 421.180-421.195 were adopted to assure that inmates of penal institutions were afforded "fair treatment" and "due process" with respect to violations of lawful regulations imposed by prison authorities.

In *Bonney v. OSP*, 270 Or 79, 526 P2d 1020

(1974),[1] the Supreme Court after reviewing the legislative history leading to the adoption of ORS 421.180-421.195, said:

"* * * The result was some ambiguous statutes, drawn in general terms, which were the result of a compromise. They are short on specifics and long on generalizations, and it must have been realized that they would be subject to court interpretation which would probably be affected by whatever ultimate constitutional answers appeared when the dust had finally settled. *We cannot escape the feeling that the legislature was attempting and intending to comply with minimum due process,* whatever the courts decided that was and which was unknown to the legislature at that time." 270 Or at 87. (Emphasis supplied.)

The question here in my view is: What with respect to the proper handling of the fact situation presented was the legislative intent?

It is undisputed that in the first instance LSD, a weapon and an escape aid were found in the prisoner's cell. Likewise it is conceded that possession of any of such items was a major violation of prison regulations and rules[2] adopted by the Corrections Division pursuant to ORS 421.180. And the second in-

---

[1] In Bonney v. OSP, 270 Or 79, 526 P2d 1020 (1974), our Supreme Court said that in a disciplinary hearing case:

"* * * There is only the requirement of a 'fair hearing,' which is nothing more than due process. * * *" 270 Or at 87.

[2] On November 11, 1973, the Corrections Division adopted "Procedures for Disciplinary Action Within Correctional Institutions and Major Rules of Conduct." Rule 9 of the Major Rules of Conduct prohibits:

"Possession or Manufacture of Dangerous Contraband

"Possession or manufacture of

"a. Weapons

"b. Narcotics or narcotics paraphernalia

"* * * * *

"d. Escape devices

"* * * * *."

volved an alleged assault or attempted assault on another inmate.[9]

Part III of the adopted "Procedures" entitled "*Procedures Prior to Hearing*" provides in part:

"4. *Segregated Status Prior to Hearing*

"* * * * *

"d. A hearing on the violation causing the segregated status before the disciplinary committee must be held within five days of the resident being placed in segregated status. * * *"

I believe that the legislature in enacting ORS 421.180, and the Division of Corrections in adopting the aforesaid "Procedures," clearly intended that they should govern the placing of any prisoner in segregation or isolation. If, as the majority holds, all of due process rights may be ignored simply by imposing the "extreme sanction" of segregation and isolation *sub nomine* "investigation" for an indefinite period, the requirement of due process rights becomes akin to a shell game with only the superintendent knowing under which shell lies the pea. We have repeatedly held that where rules have been adopted by the Corrections Division under ORS 421.180-421.195, it is required that they be complied with. *Moore v. OSP,*

---

[9] Rule 4 of the Major Rules of Conduct prohibits:

"Assault

"Fighting or the intentional physical injury of another."

Rule 15 prohibits:

"Attempt to Commit a Major Violation

"Intentionally engaging in conduct which constitutes a substantial step toward the commission of a major rule violation."

Rule 16 prohibits:

"Conspiracy to Commit a Major Violation

"Entering into an agreement with one or more persons to engage in or cause a major violation or aiding and abetting another person or persons in concealing the commission of a major rule violation."

16 Or App 536, 519 P2d 389 (1974); *Bekins v. OSP,* 19 Or App 11, 526 P2d 629 (1974).

Here the court holds that even though there were specific major rule violations with which petitioner could have been charged and, after required disciplinary procedures, committed to the segregation unit, the superintendent in lieu thereof could simply without notice, hearing or other compliance with the procedures mandated by the Corrections Division and the aforesaid statutes, or of due process itself, commit him to the segregation unit.

Such a holding obviously is pregnant with the capacity effectively to nullify ORS 421.180-421.195. Under it all the superintendent need do is to start an "investigation," send the prisoner to segregation or isolation, release him whenever he wants to and never file a disciplinary proceeding at all under ORS 421.180-421.195.

Rule V of the "Procedures" is entitled *"Disposition"* and states:

"1. *Sanctions*

" * * * * * *

"e. Place the resident in isolation status and set a maximum period the resident will remain in isolation status.

"f. Place the resident in segregation status and set a maximum period the resident will remain in segregation status.

"* * * * * *

"3. *Holding Status Effect*

"In the event a resident is placed in holding status prior to a hearing the committee shall give consideration to the time spent by the resident in such status when final disposition of the reported misconduct is made.

"* * * * *

"5. *Sanction Considerations*

"The committee shall not impose automatic sanctions for particular violation of rules."

In Wolff v. McDonnell, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974), the Supreme Court said in a footnote to that opinion:

"* * * [U]nder the Nebraska system, the same procedures are employed where disciplinary confinement is imposed. The deprivation of good time and 'solitary' confinement are reserved for instances where serious misbehavior has occurred. This appears a realistic approach, for *it would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good time is forfeited and those that must be extended when solitary confinement is at issue. The latter represents a major change in the conditons of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct.* Here, as in the case of good time, *there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction.* * * *" 418 US at 571-72. (Emphasis supplied.)

*See also: Clutchette v. Procunier,* 497 F2d 809 (9th Cir 1974), wherein the court said:

"We conclude that, except in emergency situations, the inmate's interest in preserving his slight liberty and his property and the public interest in reaching the rehabilitative ends of corrections outweigh any competing interests that could be promoted by preserving summary proceedings * * *." 497 F2d at 817.

Here no prison riot or other emergency situation existed which might warrant ignoring the intent and purpose of Rule III(4)(d).

The court's opinion here ignores what to me is a total failure to accord any due process rights whatever to the prisoner prior to, in conjunction with, or subsequent to his placement in segregation. A mere oral statement made to him as or after he is placed in segregation that he is there for "investigation" is not compliance with the "minimum due process" mandated by our Supreme Court in *Bonney* or by the United States Supreme Court in *Wolff*.

This court in its opinion in *Bonney v. OSP*, 16 Or App 509, 519 P2d 383, *aff'd*, 270 Or 79, 526 P2d 1020 (1974), which antedated *Wolff*, recognized the reality of the sanction imposing segregation when it said:

> "* * * Specifically, in its most extreme form, the question is whether a prisoner is to be removed from minimum custody to maximum custody (called 'isolation'). * * *" 16 Or App at 519-20.

The state contends that the action of the superintendent in bypassing ORS 421.180-421.195 is consistent with *Smith v. OSP*, 18 Or App 668, 526 P2d 642, Sup Ct *review denied* (1974). On the contrary, that case itself arose in an appeal from a disciplinary proceeding. There we held that the delay in concluding the disciplinary hearing was at the specific request of the prisoner and only after the disciplinary hearing itself had begun. Here no disciplinary proceeding was in either case ever begun.

In *Newton v. Cupp*, 3 Or App 434, 474 P2d 532 (1970), we said:

> "* * * We are of the opinion that habeas corpus is available in Oregon to test the constitutionality of treatment afforded an inmate of a penal institution." 3 Or App at 437.

*See also: Johnson v. Avery*, 393 US 483, 89 S Ct 747, 21 L Ed 2d 718 (1969).

I believe, therefore, this case does present issues cognizable in this habeas corpus proceeding.

The court here states, "Placement of those in his charge must, so far as possible, be left within the authority of the superintendent unless he violates a constitutional right of a prisoner or fails to follow the rules and regulations of his institution." 21 Or App at 20. I believe that there was here not only a violation of the prisoner's constitutional due process rights and a failure to follow the regulations of the Corrections Division, but also a lack of compliance with the legislative intent in the adoption of ORS 421.180-421.195.

For the foregoing reasons, I respectfully dissent.