Argued October 21, affirmed November 24, 1975, reconsideration
denied January 7, petition for review denied January 27, 1976

DENNIS M. GOODIN, *Appellant, v.* CUPP ET AL
(No. 87433 CA 4777), *Respondents.*
542 P2d 495

*Andrew P. Ositis,* Salem, argued the cause and
filed the brief for appellant.

*James A. Hill,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

In this habeas corpus proceeding, plaintiff appeals from an adverse judgment holding that a hearing was not constitutionally required as a condition precedent to a change in his custody status which was not made for disciplinary reasons.

Plaintiff entered the Oregon State Penitentiary in 1969 to commence serving a life sentence for murder. Prior to May of 1974, plaintiff's custody status was "medium I." In May of 1974, his custody status was changed to "medium."

There are four custody grades at the Oregon State Penitentiary: "minimum," "medium," "medium I," and "close." Each custody grade carries with it certain rights or privileges. "Medium I" and "close" custody prisoners are restricted to the walled portions of the penitentiary. "Medium" custody prisoners can work outside the walls under supervision. In actual operation "medium" custody is usually a transitional custody grade. Prisoners assigned a "medium" classification remain in that grade for two or three weeks during which time they work on supervised labor details outside the penitentiary walls. After the expiration of these two or three weeks, those prisoners are usually reassigned to "minimum" custody. Individuals on "medium" custody can be reassigned to "medium I" for disciplinary reasons. Prisoners on "minimum" custody have available the opportunity to work at

the penitentiary forest camp, participate in work release, go on leaves, and participate in school programs outside the walls of the penitentiary.

Prior to going outside the prison walls for the first time on a labor detail, plaintiff's status was changed back to "medium I." This change of status—the subject of this proceeding—was not preceded by notice or hearing.

■ At one point in his brief plaintiff concedes that if the change of status was administrative rather than disciplinary, no hearing was required. However, at another point he argues that since the change in condition of confinement was substantial, a hearing was required regardless of the reason for the change. As to this contention, we only note that the current constitutional[1] and statutory[2] requirements for a hearing are confined to major changes of status for disciplinary reasons. *See, Chochrek v. Cupp,* 23 Or App 1, 541 P2d 495 (1975).

Plaintiff argues that to make a distinction based upon a determination of the motivation giving rise to an act is to fall into a "semantic trap." If this be so, the distinction between murder and justifiable homicide must fall into the same category.

■■ The trial court in effect found that the change of plaintiff's status was in fact as well as in theory administrative and not punitive. There is evidence to support his finding.[3]

The superintendent of the prison testified that in light of what he termed the "conservative climate"

[1] Wolff v. McDonnell, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974).

[2] ORS 421.180 to 421.190.

[3] In fact, the record contains no hint of any punitive motivation underlying the administrative order changing plaintiff's status.

which followed a series of heinous crimes committed by a prisoner who had escaped while on pass outside the walls of the prison, prison authorities had reevaluated the custody status of numerous inmates. Plaintiff had been convicted of murder in which the victim was killed "gangland style" by being shot a number of times. Psychiatric evaluations described plaintiff as suffering from paranoid schizophrenic reactions. Police reports stated that plaintiff's ambition had been "* * *  to become a hired killer for the syndicate." The superintendent further testified that as a result of the "conservative climate," plaintiff knew that he was probably going to serve a longer time than he had previously anticipated before being seriously considered for parole and that this might well make plaintiff despondent. Based on all of this information, the superintendent concluded that for the present plaintiff represented too high a risk of danger to the community to be permitted on "medium" custody status.

Affirmed.

THORNTON, J., concurs in the result.