Argued March 20, affirmed March 8, 1978

# WAYNE A. MASON, *Petitioner,*
### *v.*
# OREGON STATE CORRECTIONAL INSTITUTION, *Respondent.*
### (No. 611-D, CA 9637)
578 P2d 808

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for the respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

In this prison discipline case, petitioner, while on work release to the Lane County Community Corrections Center, was charged with having consumed an alcoholic beverage in violation of Institution Rule 7—possession, manufacture or use of dangerous contraband.[1] Petitioner was found to have alcohol on his breath when checking in at the Center after a job search. He became belligerent and had to be restrained.

At his hearing, petitioner pleaded guilty to the charge. The Disciplinary Committee recommended that petitioner receive 14 days segregation and non-certification of 300 days of "good time." The Superintendent approved the recommendation.[2]

Petitioner challenges the sanction on two grounds. First, he claims the penalty imposed is so disproportionate to the offense as to violate Article I, sections 15 and 16 of the Oregon Constitution.[3]

Neither provision directly relates to sanctions in prison discipline cases. *See Kent v. Cupp,* 26 Or App 799, 802-803, 554 P2d 196 (1976). We note, moreover, that the sanction imposed is a response not only to the act of drinking, but to petitioner's belligerence and to

[1] The rule codified as OAR 291-40-050(7)(g) and provides:

"(7) Possession, Manufacture, or Use of Dangerous Contraband. No inmate shall possess, manufacture, or use:

"* * * * *

"(g) Intoxicants * * *."

[2] The Superintendent increased the sanction by requiring that petitioner be returned to "Inside Custody." Petitioner does not separately challenge the increase in custody status.

[3] "Section 15. Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice.

"Section 16. Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of the new trial, as in civil cases."

the jeopardy in which such activity causes community corrections programs to be placed. The sanction was not unconstitutional. Absent a demonstration of unconstitutionality or unlawfulness, this court does not inquire into the extent of a sanction. *Whiley v. OSP,* 18 Or App 86, 523 P2d 1051 (1974).

Second, petitioner maintains that a part of the sanction imposed—the forfeiture of 300 days' "good time"—violates statutory and administrative rules. OAR 291-40-425(a) (Rule 4) sets minimum and maximum amounts of good time which may be forfeited under various circumstances. For example, misconduct constituting a hazard to security requires a minimum loss of 25 percent and a maximum loss of 50 percent of good time and extra good time earned,[4] or two years, whichever is greater.

ORS 421.120(1)(h)[5] requires the Corrections Division to adopt a uniform procedure for retracting good time. OAR 291-40-425(A)(5) (Rule 5), which was in efffect at the time this sanction was imposed, provides:

> "In no instance shall a greater amount of good time be recommended for forfeiture than is lawfully available to the inmate under the sentence(s) currently being served by the inmate."

Here, petitioner claims, "[t]he record * * * is devoid of facts, findings or conclusions which indicate that the good time forfeiture was within the limits set by [Rules 4 and 5, *supra*]."

Neither statute nor rule requires that the record affirmatively show that no more good time was taken than was available to petitioner and we do not presume to the contrary.

---

[4] "Extra" good time is good time earned by an inmate for voluntary activity. ORS 421.120(1)(c)-(e). It is earned in addition to the good time which an inmate automatically accumulates if he avoids significant disciplinary problems. *See* ORS 421.120(1a) and (1b).

[5] "The Corrections Division shall develop pursuant to the rulemaking provisions of ORS chapter 183 a uniform procedure for granting, retracting and restoring deductions allowed in paragraphs (a) to (g) of this subsection."

We wish to add that there appears little justification for this case coming to us in this posture: argued *in vacuo* when it was well within the power of either party to cause the record to be supplemented to show whether petitioner did or did not have more than 300 days of statutory good time available on November 4, 1977. We think it reasonable to expect that the parties will, in future, see to it that the good time status is clarified before claims like this one are made. Clarification, we believe, will obviate the need for appeals: If too much time was taken, the Corrections Division does not need to be told what its duty is; if a proper amount was taken, there need be no appeal.

No constitutional or statutory violation has been shown, and the order of the Superintendent is affirmed.

Affirmed.