Submitted on remand from the Oregon
Supreme Court February 7, 1979, affirmed April 2, 1979,
former opinion withdrawn.

DAVID RUTHERFORD, *Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(No. PD 650-D, CA 10407, SC 25795)

592 P2d 1028

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respndent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

SCHWAB, C. J.

**SCHWAB, C. J.**

This case is before us again on remand from the Supreme Court. 285 Or 185, 589 P2d 1127 (1979).

I

Petitioner, an Oregon State Penitentiary inmate, was participating in a work release program, during which he was housed at the Multnomah County Correctional Institute. He was charged with violating rules governing the work release program, primarily by using alcohol and drugs. A hearing on these allegations was held before a Corrections Division hearings officer. Evidence was introduced that petitioner appeared intoxicated upon returning to the Correctional Institute from work; and that chemical tests revealed blood alcohol content of .08 percent and the presence of Valium. Petitioner's counselor at the Correctional Institute testified about prior incidents— petitioner's repeatedly driving a car without the required permission and being deceitful to officers—and opined, in effect, that petitioner was being manipulative and abusing the privileges of the work release program. Petitioner admitted that all charges were true, but offered several "explanations" in mitigation, and requested that he not be transferred out of the work release program. The hearings officer made several critical comments; for example, he characterized petitioner's "explanations" as "nonsense."

The hearings officer subsequently entered his written recommendation that petitioner be transferred from the work release program to Oregon State Penitentiary. That recommendation was followed and ordered by the Chief of Field Services.

On appeal from the transfer order, petitioner contends that the hearings officer's comments demonstrate bias and lack of impartiality, and that the hearings officer thus erred in failing to withdraw on his own initiative from consideration of petitioner's case.

[433]

## II

Our prior decision dismissed petitioner's appeal on the ground of lack of jurisdiction. 35 Or App 352, 581 P2d 140 (1978). Upon reconsideration, we conclude we were incorrect in holding we lacked jurisdiction.

### A

Our prior relevant cases are somewhere between inconclusive and inconsistent on the jurisdictional question—which is at least partly explained by the shifting sands of constitutional doctrine in this area and various statutory changes.

In 1971 the Administrative Procedures Act, ORS ch 183, was substantially amended. Inmates began making claims that prison actions that affected them were subject to the APA. *Paola/Ryan v. Cupp*, 11 Or App 43, 500 P2d 739, *rev den* (1972), was one such case— although it is not possible to tell from the opinion whether it arose under the pre-1971 or post-1971 APA. In *Paola/Ryan* the petitioners contended that orders terminating their participation in an education release program were invalid under the APA. This court held that the Corrections Division's administration of the relevant program, including terminating an inmate's participation therein, was exempt from the APA. This court relied upon ORS 144.450(4) which then provided—and continues to provide—in relevant part that the APA "does not apply to actions taken under this section."

But in other situations in which prisoners were claiming APA rights, there was not an express statute to defeat their claims. So as authorized by the APA, ORS 183.315(5)(b), the Corrections Division obtained an exemption from the Governor. Under the APA, this exemption could only remain in effect until the adjournment of the next, *i.e.*, 1973, legislative session. The 1973 legislature responded by adopting the present prison disciplinary statutes. ORS 421.180 to 421.195. *See generally Bonney v. OSP*, 16 Or App 509,

[434]

514-18, 519 P2d 383, *aff'd* 270 Or 79, 526 P2d 1020 (1974).

One of the issues in *Chochrek v. Cupp*, 23 Or App 1, 541 P2d 495 (1975), involved an inmate's transfer, because of rule violations, from a school release program to the penitentiary. At that time, the only constitutional standard was that a hearing was required before "a major change in the conditions of [an inmate's] confinement * * * imposed only when it is claimed and proved that there has been a major act of misconduct." *Wolff v. McDonnell*, 418 US 539, 572, n 19, 94 S Ct 2963, 41 L Ed 2d 935 (1974). Applying that standard, we concluded that a hearing was constitutionally required before a prisoner could be transferred from a school release program to the penitentiary because of alleged rule violations, and that if the hearing culminated in a transfer order appeal lay directly and solely to this court under ORS 421.195.

Subsequently the United States Supreme Court held that there was no right to a hearing before an inmate could be transferred within a penal system. *Meachum v. Fano*, 427 US 215, 96 S Ct 2532, 49 L Ed 2d 451 (1976); *Montayne v. Haymes*, 427 US 236, 96 S Ct 2543, 49 L Ed 2d 466 (1976). Specifically, as the court put it in *Montayne*, 427 US at 242:

" * * * The Process Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive."

*Meachum* and *Montayne* thus vitiated our prior constitutional holding in *Chochrek v. Cupp, supra.*

*Goodin v. Cupp*, 23 Or App 407, 542 P2d 495 (1975), *rev den* (1976), involved an inmate who had been "transferred" from one "custody grade" to another within the prison. Before the transfer, he had enjoyed greater privileges than he did afterwards. This court held that the transfer was for administrative reasons, and that there was no right to notice or hearing before an administrative transfer.

*Kessler v. OSCI*, 26 Or App 271, 552 P2d 589 (1976), was a challenge to the procedures used to transfer a prisoner from Oregon to an out-of-state institution. We held: (1) there is no constitutional right to a pretransfer hearing; (2) "our statutes do not mandate pretransfer hearings," 26 Or App at 275; and (3) if the Corrections Division chooses to nevertheless provide for pretransfer hearings, rules to do so must be adopted in accordance with the Administrative Procedures Act.

*Saniti v. OSP*, 26 Or App 493, 552 P2d 1312, *rev den* (1976), also held there was no right to notice or hearing before either intrastate or interstate transfers of prisoners between penal institutions.

*Palmer v. OSP*, 24 Or App 177, 545 P2d 141 (1976), involved a single act—disobeying an order—that led to the inmate's transfer from a forest camp to the penitentiary and to a loss of good time. The issue on appeal related only to the ordered loss of good time. The disciplinary transfer was mentioned in connection with whether the total sanction—reconfinement plus loss of good time—was excessive.

*Liston v. Oregon Corr. Div.*, 26 Or App 83, 552 P2d 275, *rev den* (1976), was an appeal from an order that transferred a prisoner from work release to the penitentiary. The court reviewed the transfer on the merits, without suggesting in any way that the transfer order might not be appealable.

*Herman v. OSP*, 32 Or App 393, 574 P2d 347 (1978), involved a single act—drinking beer—that led to the inmate's transfer from work release to the penitentiary and to a loss of good time. Although the only issue on appeal related to the loss of good time, there was some discussion of whether the inmate had adequate notice of what conduct was prohibited on work release—which might have been germane to the validity of the transfer order.

[436]

*Mason v. OSCI,* 34 Or App 329, 578 P2d 808 (1978), was another case where the same act gave rise to a disciplinary transfer and a loss of good time. The court expressly said only the good-time matter had been appealed, and that the transfer had not. There was no suggestion that the transfer matter could not have been appealed.

The opinion in *Storms v. OSP,* 35 Or App 545, 581 P2d 979 (1978), involved only a motion to supplement the record. In the process of granting that motion the court stated:

" * * * [A]n appeal of a decision relating to work release is not subject to judicial review under ORS 421.195. *Paola/Ryan v. Cupp* * * *." 35 Or App at 548, n 1.

This statement cannot be correct because *Paola/Ryan* was decided in 1972 before ORS 421.195 was enacted in 1973.

B

■ It is now settled that as a matter of constitutional law a prisoner is not entitled to a hearing before being transferred from one penal institution to another, or within a single penal system, regardless of whether the transfer is for a "disciplinary" or any other reason. *Meachum v. Fano, supra; Montayne v. Haymes, supra.* To the extent that *Chochrek v. Cupp, supra,* or any of the other cases summarized in Part II(A), *supra,* hold or imply the contrary, they are overruled.

C

■ The question remains whether there is a statutory right to a hearing in the context of a disciplinary transfer. The prison disciplinary statutes provide:

"The division shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. The procedures adopted shall be subject to the approval of the Governor." ORS 421.180.

[437]

"The procedures adopted pursuant to ORS 421.180 shall provide that an inmate shall be entitled to assistance and representation under terms and conditions established by the division. Nothing in this section shall be construed to limit the authority of the division to designate persons eligible to assist and represent the inmate." ORS 421.185.

"Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedure and the division shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing." ORS 421.190.

"If an order places an inmate in segregation or isolation status for more than seven days, institutionally transfers him for disciplinary reasons or provides for nondeduction from the term of his sentence under paragraphs (a) and (b) of subsection (1) of ORS 421.120, the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 30 days of the order for which review is sought. The division shall transmit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the division. The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (8) of ORS 183.482. The filing of the petition shall not stay the division's order, but the division may do so, or the court may order a stay upon application on such terms as it deems proper." ORS 421.195.

These statutes were adopted at the same time and must be construed together. ORS 421.180 requires procedures "to be utilized in disciplining" prisoners. ORS 421.190 provides that the procedures used should "afford the inmate a reasonable opportunity for a fair hearing." ORS 421.195 provides for Court of Appeals review of "an order [that] * * * institutionally transfers [an inmate] for disciplinary reasons." Considering

[438]

these provisions together, it can be argued that the legislature intended that there be a hearing before and judicial review of a transfer for disciplinary reasons.

On the other hand, in *Bonney v. OSP, supra*, we interpreted the above statutes to create no rights beyond minimum due process. 16 Or App at 518. On review in *Bonney*, the Supreme Court also so interpreted the statutes. 270 Or at 87, 90. The subsequent United States Supreme Court rejection of a due process right to a pretransfer hearing, combined with the *Bonney* interpretation, could mean no statutory right to a pretransfer hearing. And if there were no statutory right to a hearing, it would be difficult to imagine judicial review under ORS 421.195 given that there would be no hearing record to review.

We conclude that the more likely interpretation is that hearings and the opportunity for judicial review are required for disciplinary—as distinguished from administrative—transfers. The *Bonney* interpretation was made in the context of what hearing *procedures* were required. Here, by contrast, we have the separate question of *whether* a hearing is required. If we were to hold that a hearing is not required for a disciplinary transfer, we would be amending ORS 421.180— "procedures to be utilized in disciplining persons"—by adding "except when the discipline is in the form of a transfer." If we were to hold that a hearing is not required for a disciplinary transfer, we would be amending ORS 421.195 by rendering meaningless the reference to judicial review of the record supporting a disciplinary transfer.

To the extent that *Kessler v. OSCI, supra*, or any of the other cases summarized in Part II(A), *supra*, hold or imply that hearings are not *statutorily* required before a disciplinary transfer, they are overruled.

## D

The Corrections Division rules are generally in accordance with our present interpretation of ORS

[439]

421.180 to 421.195. OAR 291-10-530(2) and (3) require that staff explain the conditions, stipulations and rules of the work release program to new enrollees. OAR 291-10-535(1) provides:

> "Removal from the Work Release program can be accomplished by:
> " * * * * *
> "(d) Violation of law, condition, or stipulation * * * as determined by a hearing * * *."

OAR 291-10-540(3) requires:

> " * * * [T]he representative of Work Release who observes or discovers misconduct shall promptly submit an Unusual Incident Report. Such report shall outline circumstances of the alleged misconduct. The enrollee shall be provided with a copy of the report within a reasonable time prior to the hearing."

OAR 291-10-540(5) provides:

> "Within a reasonable time * * * after the filing of an Unusual Incident Report, a Hearings Officer will schedule a hearing."

The hearing culminates in a Hearings Officer's Report, which under OAR 291-10-545(10)(e) and (f), must include "[f]indings of fact" on the "[a]lleged rule violation."

The state argues that OAR 291-10-550(2) establishes that "the hearings officer has no authority to impose a disciplinary action." That section authorizes the hearings officer to recommend: (a) continue the enrollee in work release; (b) continue the enrollee in work release with program changes; or (c):

> "To remove enrollee from the Work Release program and return him to custody of the parent institution for appropriate action. Removal action will be taken when facts demonstrate that the enrollee cannot adjust to the program requirements of Work Release."

However, the state's argument ignores the fact that the tenor of the relevant statutes, ORS 421.180 to

[440]

421.195, is to the effect that at least some institutional transfers can be disciplinary sanctions. The fact that the Corrections Division regulations do not label transfers as disciplinary sanctions cannot be controlling in interpreting the statute.

Indeed, we find illuminating—although also not controlling—the hearings officer's comments to petitioner at the outset of the hearing here challenged: " * * * if you disagree with the decision that is made you have the opportunity to appeal to the Administrator of the Corrections Division * * * *and through the Appellate Courts.*" (Emphasis supplied.)

■ In summary, we conclude that the relevant statutes and regulations require that there be a hearing before an Oregon prisoner is transferred, *i.e.*, a significant change in the terms and conditions of confinement, for disciplinary reasons. No hearing is required, however, if such a transfer is for administrative reasons. We leave for future cases the task of defining the distinction between disciplinary and administrative transfers. For present purposes, it is sufficient to say that the petitioner's transfer—ordered based on the conclusion that he "is found to be in violation of work release" rules prohibiting consumption of alcohol and drugs—is disciplinary in nature.

### III

■ On the merits, petitioner contends that comments of the hearings officer establish bias and lack of impartiality. We disagree. While some of the comments were a bit intemperate, most were made *after* petitioner had presented his "explanations" for his admitted misconduct. As we read the record, the hearings officer's comments were a forceful way of saying he found the "explanations" to be unpersuasive. Thus viewed, the comments were about petitioner's evidence and do not indicate the hearing officer lacked the ability, before he heard the evidence, to impartially weigh it.

Former opinion withdrawn; affirmed.